Aubrey FRETT, Lynn Dickerson, and Clinton David

v.

GOVERNMENT OF THE VIRGIN ISLANDS, Bureau of Corrections, et al.

Appeal of GOVERNMENT OF THE VIRGIN ISLANDS, Richard A. Schrader, Edwin Potter, and Reuben Smith.

No. 86–3604.

United States Court of Appeals, Third Circuit.

Argued Dec. 9, 1987.

Decided Feb. 17, 1988.

Godfrey R. de Castro, Acting Atty. Gen., Victor G. Schneider (argued), Asst. Atty. Gen., St. Thomas, Virgin Islands, for appellants.

George H. Hodge, Jr., (argued), St. Thomas, Virgin Islands, for appellee.

Before GIBBONS, Chief Judge, and STAPLETON and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

The Government of the Virgin Islands, Edwin Potter, Richard Schrader, and Reuben Smith, appeal from a judgment holding them jointly and severally liable to Clinton David for $200,000 in damages for personal injuries. David was an inmate in the Golden Grove Correctional Institution, St. Croix, United States Virgin Islands, when on February 7, 1983 he was stabbed by Angel Soto, a fellow inmate. Richard Schrader, the warden of that facility, and corrections officer Reuben Smith, were on duty at Golden Grove at the time of the incidents leading up to the stabbing. Edwin Potter is the Director of Prison Institutions who permitted Angel Soto to remain in the general prison population at Golden Grove. These defendants, all represented by the Attorney General of the Virgin Islands, contend that the District Court of the Virgin Islands erred in denying their motions for Judgment Notwithstanding the Verdict. We will affirm.

### I.

### The Pleadings

This action was originally filed on behalf of three Golden Grove inmates who were injured by allegedly aggressive, antisocial inmates who were permitted to remain in the general prison population despite patterns of conduct suggesting the need for their isolation in order to prevent injury to fellow inmates. The complaint was dismissed for lack of prosecution by Aubrey Frett and Lynn Dickerson, but the case of Clinton David proceeded to trial. The factual allegations with respect to David are as follows:

7. That on or about February 7, 1983, Angel Soto, a fellow inmate, threatened to burst open the head of Plaintiff Clinton A. David, with a rock following a disturbance at the prison cafeteria in Golden Grove, St. Croix.

8. That when Clinton A. David left the cafeteria, around 4:00 o'clock P.M. on said date, Angel Soto did in fact hit Plaintiff with a rock against the back of his head.

9. That Correction Officer Lt. Reuben Smith grabbed Clinton A. David and took away a stick from him, which he picked up to defend himself against Angel Soto.

10. That Angel Soto was also seen with a knife in his hand and ran off when Correction Officer, Martin Heywood requested the knife from him.

11. That the Warden, Richard Schrader, witnessed the incident, but failed to take aggressive measures to retrieve said weapon from Angel Soto.

12. That Clinton A. David proceeded to the restroom in the cafeteria to wash the blood off his head wound.

13. That while Clinton A. David was washing his wound with his back turned to the door, Angel Soto stabbed him five (5) times in the back with a knife having a blade approximately 5-½ inches in length and 2 inches in width.

14. That Clinton A. David fell to the ground and Angel Soto began beating him viciously with his fists.

15. That Clinton A. David was immediately taken to the Community Hospital in Christiansted, St. Croix, where he was placed on the critical list for over a week.

16. That the Correction Officers finally took aggressive measures to retrieve the knife from Angel Soto only after the stabbing incident.

17. That if Lt. Reuben Smith and the Warden, Richard Schrader, had seized Angel Soto, rather than Clinton A. David, the incident could have been avoided.

\* \* \* \* \* \*

24. That the Governor of the United States Virgin Islands, Juan Luis, the Commissioner of Public Safety, Otis Felix, and the Director of the Prison Institution, Edwin Potter, have promulgated rules and regulations for the Bureau of Corrections in St. Croix resulting in an egregious failure to protect the Plaintiffs and other inmates.

25. That the Bureau of Corrections' Rules and Regulations forbid the use of firearms within the perimeter of the prison.

26. That the Correction Officers have established a custom of failing to assist or protect the inmates in order to safeguard their own health, safety and welfare.

27. That the Government of the Virgin Islands, Bureau of Corrections, Governor Juan Luis, Otis Felix and Edwin Potter knew or ought to have known of the conditions that exist at the prison in Golden Grove, Christiansted, St. Croix, from the number of incidents they have documented in their files.

28. That the reckless indifference of all the above named Defendants is the proximate cause of Plaintiffs' injuries.

The complaint alleges that the defendants violated 42 U.S.C. § 1983. The jurisdictional allegation relies on section 22 of the Revised Organic Act of 1954, 48 U.S.C. § 1612, which confers general original civil jurisdiction on the District Court of the Virgin Islands when the matter in controversy exceeds $500. Thus, although the complaint relies on 42 U.S.C. § 1983, its factual allegations must also be considered in light of the territorial law of the Virgin Islands.

The first responsive pleading was a motion on behalf of the Government of the Virgin Islands to dismiss David's claim because David failed to comply with the notice of claim provisions of the Virgin Islands Tort Claims Act. *See* 33 V.I.Code Ann. §§ 3401 *et seq.*, § 3409 (Equity Supp. 1986) (Tort Claims Act). David responded by filing affidavits establishing that he had filed with the government an untimely notice of intention to file claim, and suggesting reasons why the late filing should be excused. No opposing affidavits were filed, and the district court ruled that David had demonstrated "reasonable excuse" within the meaning of 33 V.I.C. § 3409(c) for the failure to file his notice of claim within 90 days. The defendants do not on appeal contest that ruling.

Following discovery, the parties entered into a stipulation of facts as follows:

1. The plaintiffs are citizens of the United States of America and residents of St. Thomas, United States Virgin Islands.

2. The defendants were duly appointed, employed, elected public officials and employees of a municipal corporation or governmental subdivision of this United States Virgin Islands.

3. The defendants are also residents of the United States Virgin Islands.

4. This action arises under the United States Constitution, particularly under the provisions of the Eighth Amendment to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

5. On February 7, 1983 the plaintiff Clifton David was stabbed five (5) times in his back by another inmate known as Angel Soto following an altercation between them.

6. Plaintiff David was rushed to the emergency room at the St. Croix Hospital and was assigned to the Intensive Care Unit where his condition remained critical.

7. Angel Soto stabbed him with a knife having a blade of approximately 5½ inches in length and 2 inches in width.

8. Angel Soto and Plaintiffs were at all time pertinent to this civil action under the exclusive care, custody and control of the named defendants.

Thus, the fact of David's injury, the official positions of the individual defendants, and their exclusive custody of Soto and David were not in issue.

## II.

### Proceedings in the Trial Court

The case went to trial on the issue of liability of the Government of the Virgin Islands and the individually named defendants for damages caused by Soto's assault and battery. The stipulation of facts was marked in evidence and read to the jury. David also placed in evidence 20 other exhibits, and presented the testimony of five witnesses including a Golden Grove record keeper and the defendants, Smith and Potter.

The exhibits include 19 incident reports and letters over a two year period with respect to Angel Soto involving threats to guards and inmates, assaults on guards and inmates, theft from other inmates, failure to make the inmate count on time, arson in a cell, and possession of weapons, including pipes, knives, and a part of a scissors. Some of these incidents resulted in the hospitalization of inmates. Many of these incident reports were referred to hearing committees. Some of the committee reports resulted in extended periods of "lockdown" for Soto. Several inmate complaints of assaults by Soto also resulted in Soto's immediate lockdown. One incident report of a weapons possession resulted in Soto's use of an iron bar to burst out of his cell after he had been locked down. At least one assault by Soto on a fellow prisoner caused that prisoner to lose consciousness.

These several incident reports are business records of the Bureau of Corrections. Some are addressed to Warden Schrader himself. Among them is a report of June 24, 1982, of an arson and an assault on a guard in which Samuel Garrett, Chief Corrections Officer, reported:

This inmate [Soto] is very dangerous, willful and vicious. The behavior of Inmate Soto should not be taken slightly in light of his current actions. Inmate Soto continues to boast that he done fuck up two guards already and he will fuck up as much as he can again.

It was only hours before this incident occur that I heard Soto saying he don't give a fuck and that he will make blood run again.

(Exhibit D19). From these exhibits the jury could conclude that Angel Soto was an extremely short tempered, dangerous, antisocial person who posed a serious risk of harm to other persons exposed to his company, and that many persons in charge of the Golden Grove prison were fully aware of that risk.

David testified that on February 7, 1983, when he was in the cafeteria line with Soto another inmate hit Soto on the back of the head with a bowl. Soto accused David and an argument ensued. After he left the cafeteria for the prison yard, in the presence of officers Smith and Senthall, Soto hit him in the back of the head with a rock. Officer Smith told David to report to "Control" for treatment of his head wound, and told Soto to report to his dorm for lockdown. Soto retorted "It's not done yet." On his way to Control, David stopped at the prison kitchen to wash the blood from his head. Ten minutes later Soto appeared and charged David, holding a knife. David ran, but Soto grabbed him from behind in a neck hold, and proceeded to knife him five times. David was taken to the hospital, where he remained in intensive care for a week.

Officer Smith testified that he and two other corrections officers witnessed Soto hit David with a rock. The three officers were immediately joined by a fourth. Smith, the senior officer present, ordered Soto to report for a lockdown, and ordered David to report to Control for medical attention. He testified that "Mr. Soto is the type of guy that when time came to lockdown he put up a struggle." According to Smith, Soto said, "You are not going to put me in the dorm today." Smith took no

steps to apprehend Soto even though four officers were present. He stated that he had a strong feeling that Soto wanted "to get inside his room to try and get whatever weapon to get whatever he want to get." Instead of pursuing Soto to prevent him from obtaining a weapon, Smith went to Control to inquire about David. Smith acknowledged that

> if we couldn't get him in confinement, I don't believe Soto would stop. I know him, that is the type of guy Soto is.

Smith's testimony strongly suggests two motivations for not pursuing Soto immediately: fear for his own safety if he confronted Soto alone, and fear that a confrontation with Soto in the yard would involve other inmates in a hassle.

Director Potter testified that Warden Schrader was in direct charge of Golden Grove and that he was above Schrader in the administrative hierarchy. Potter acknowledged that Warden Schrader had written to him about the trouble Angel Soto was causing, and that he was familiar with Angel Soto's dangerous propensities. Potter claimed, however, that

> [i]f the warden sees it is within his scope that he wants to confer with me which most of them usually do then we try to make the decision and find out what we can do with him, but it is his primary area of responsibility.

Potter acknowledged that Angel Soto

> was more violent than any other prisoner that we have to cope with. There was one other prisoner that I know of that was just as violent as he was.

In response to a question by the court, Potter acknowledged that Soto's behavior was unusual in the prison population. The jury could find from Potter's testimony, however, that it was the policy of the Bureau of Corrections not to isolate even so dangerous a prisoner as Soto from the general prison population "because the man is a social animal, and he has to confer with other people and speak to them socially."

Following Potter's testimony, David's counsel requested that the court take judicial notice of the statutes of the Virgin Islands dealing with custody of prisoners, of the decision in *Barnes v. Government of the Virgin Islands*, 415 F.Supp. 1218, 1229 (D.C.V.I. 1976), which contains findings about the inadequacy of internal security at Golden Grove, and of a report, in evidence as plaintiff's exhibit 21, of the Sub-Committee on Corrections of the 13th Legislature's Study Committee on Public Safety dealing in part with lack of internal security at Golden Grove. David then rested.

At that point the Attorney General moved on behalf of all the defendants for a Directed Verdict. Confusion as to the applicable standard of care, violation of which plaintiff must prove, surfaced at the outset of the argument on that motion. The Deputy Attorney General urged:

> On the plaintiff's case, in order to prevail and get liability to reach the government or Commissioner Felix, [or] Commissioner Potter, he will have to show, one, by evidence that either of them were either directly or at least *negligent* in seeing or fostering a situation which they had reason to see will take place.

(Emphasis supplied). The court, referring to *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), corrected counsel, pointing out that in section 1983 cases the applicable standard of care was not negligence—reasonable care—but recklessness. The court made no mention of the standard of care owed by prison officials under Virgin Islands law. The court denied all motions except that on behalf of Governor Juan Luis, and that on behalf of former corrections Commissioner Felix, and heard argument from David's counsel only with respect to those defendants. The case against the Governor was then dismissed based on qualified immunity.[1] The court reserved ruling on former Commissioner Felix in order to determine if he had

---

1. Since qualified immunity is an affirmative defense, dismissal on that ground may have been error. An answer must expressly set forth all affirmative defenses, the failure of which results in the involuntary waiver of such defenses and their exclusion from the case. *See* Fed.R.Civ.P. 8(b).

statutory responsibility at the critical time. In denying the motions against the other defendants, the court concluded that a jury could find that the remaining defendants had acted with reckless disregard of David's safety, and had thereby contributed to his injury. No directed verdict motion was made on behalf of the government on the ground that the decision to leave Soto in the general prison population was not consistent with the policies of the Department of Corrections.[2]

The defendants then presented their witnesses, in an effort to establish that leaving Angel Soto in the general prison population was an appropriate response to his pattern of behavior. At the end of a day's testimony, well before the end of the government's case, the court itself raised the question of requests to charge. The court indicated that the section 1983 charge would be consistent with section 1983 instructions prescribed by E. Devitt and C. Blackmar, in *Federal Jury Practice and Instructions* (3d ed. 1977). David's attorney responded:

> MR. HODGE: Yes, Your Honor, but the point that I was alluding to is that you mentioned that if any of the defense were found justifiable to the extent of mere negligence that you would have dismissed the action against those individuals. But in my interpretation of Danielson case and Davidson's case, if there is a local state statute that allows for recovery due to mere negligence, then the plaintiff is entitled to recover under the local statute. Those two cases, the local statute in both states not allow for recovery nor for mere negligence, but the Virgin Islands Code does allow recovery for ordinary negligence.

Thus David explicitly called to the court's attention his reliance on Virgin Islands law for the standard of care, and his position in this respect was consistent with that taken by the Deputy Attorney General at the outset of defendants' motions for Directed Verdicts. Without ruling on this issue immediately, the court requested written requests to charge.

At the end of the defendants' case those still in the case renewed their motions for Directed Verdicts, arguing that Officer Smith did not act recklessly in failing to apprehend and lock down Angel Soto after the rock attack, and that Warden Schrader and Commissioner Potter had not acted recklessly in leaving Soto in the general prison population. Just as happened at the end of David's case, the defendants did not move that the government should be relieved of liability because of the absence of proof that leaving Soto in the general prison population was inconsistent with Department of Corrections policies.

After ruling on the motions for a Directed Verdict, the trial court held an off the record charge conference. We are thus not fully informed about the court's reasoning in rejecting David's request for a negligence instruction as well as a recklessness instruction. We do know that such an instruction was requested, because a plaintiff's request for instruction was received by the clerk and filed on April 7, 1986. That it was rejected is apparent from the court's instruction, which in relevant part, reads:

> To find these defendants or any of them liable, their acts or failure to act must amount to reckless disregard of the rights of this prisoner, David, in particular, as well as the rights of the other prisoners in the general population.
>
> To act in "reckless disregard" of a person's rights means the voluntary doing or failure to do of something that you're requested to do. It means such disinterest in the thing you are supposed to do, that your conduct may be classified as wanton, reckless. Conduct is wanton if it is done in disregard of the rights of others.

2. See *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Since under 33 V.I.C. § 3414, the Government is obliged to indemnify the individual defendants up to $100,000 for liability for activities within the scope of their employment, focusing the jury's attention only on the liability of the individual actors probably was a tactical choice.

The court then gave instructions on the lawful authority and duty of the defendants, including the duty "to prevent one prisoner from injuring another." Explaining that the injury inflicted by Soto is not in itself proof that any defendant acted improperly, the court continued:

It is only if you find from a preponderance of the evidence of this case that the defendants while purporting to act under color of lawful authority granted to them as custodians of the facility and these prisoners either acted in disregard, reckless disregard of rights, or failed to act when they should have acted when such failure amounts to the level of reckless disregard.

We are not talking about negligence. We are talking about wanton reckless disregard which is so blatant that it almost measures up to intentional conduct.

The defendants did not object to this instruction.

The case was submitted to the jury with agreed forms of written verdict, and the jury returned a verdict finding the Government of the Virgin Islands, Edwin Potter, Richard Schrader, and Reuben Smith, jointly and severally liable for $500,000 in compensatory damages. The defendants moved for a Judgment Notwithstanding the Verdict, or a New Trial. The motion for a Judgment Notwithstanding the Verdict was denied. On the new trial motion the trial court ordered a $300,000 remittitur which David accepted. This appeal followed.

### III.

### The Applicable Law

Prison keepers in the Virgin Islands are bound both by the local statutory and common territorial law, and by virtue of the Revised Organic Act of July 22, 1954, 48 U.S.C. § 1541(b), by the federal constitution and federal statutes implementing its enforcement. *See Davis v. Knud–Hansen Memorial Hospital,* 635 F.2d 179 (3d Cir. 1980); *Ocasio v. Bryan,* 374 F.2d 11 (3d Cir.1967). Because the District Court of the Virgin Islands is by virtue of 48 U.S.C. § 1612(b) a court of general jurisdiction, it is obliged, absent some overriding reason, to consider both local law and federal law grounds which would support requested relief. *See Carty v. Beech Aircraft Corporation,* 679 F.2d 1051, 1053–57 (3d Cir. 1982). Indeed, the general rule that any tribunal considering a federal constitutional claim should avoid unnecessary adjudication of such a claim by relying on nonconstitutional law which would afford the same relief suggests that the District Court of the Virgin Islands should generally look first to territorial law. *See, e.g., Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Siler v. Louisville & Nashville R.R. Co.,* 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909).

### A. Virgin Islands Law

The Virgin Islands statute governing the Bureau of Corrections is codified at 5 V.I. Code Ann. §§ 4501–4513 (Equity Supp. 1986). The statute does not deal with the standard of care owed by Bureau officials to prisoners. In the absence of a statute setting forth the level of care to be given by Bureau officials, the law of the Virgin Islands is as expressed in the Restatements of the Law approved by the American Law Institute. 1 V.I.Code Ann. § 4 (1967). Two sections of the American Law Institute statute are relevant:

One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

Restatement (Second) Torts § 319 (1964).

One who is required by law to take or who voluntarily takes the custody of another under circumstances as such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor

(a) knows or has reason to know that he has the ability to control the conduct of the third persons, and

(b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) § 320 (1964). The affirmative duty of care referred to in sections 319 and 320 is one of "reasonable care," the traditional negligence standard. The parties herein stipulated that Angel Soto and David were at all times pertinent to this case in the exclusive care, custody and control of the named defendants. Thus the territorial law issues left for trial were whether the defendants knew or should have known that Angel Soto was likely to cause bodily harm if not controlled, and whether they exercised reasonable care to control him so as to prevent such harm.

The *respondeat superior* liability of the Government of the Virgin Islands for the negligent acts of employees of the Bureau of Corrections, however, requires consideration of two statutes. The first is section 2(b) of the Organic Act which states:

The government of the Virgin Islands ... shall have the right to sue by such name and in cases arising out of contract, to be sued;

*Provided,* That no tort action shall be brought against the government of the Virgin Islands or against any officer or employee thereof in his official capacity without the consent of the legislature constituted by [this act].

48 U.S.C. § 1541(b) (emphasis in the original). The second is the Claims Act wherein the legislature of the Virgin Islands waived the immunity conferred on it in section 2(b) of the Organic Act. The Tort Claims Act provides:

The Government of the Virgin Islands hereby waives its immunity from liability and action and hereby assumes liability with respect to injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government of the Virgin Islands while acting within the scope of his office or employment, under circumstances where the Government of the Virgin Islands, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. The Government consents to have this liability determined in accordance with the same rules of law as applied to actions in the courts of the Virgin Islands against individuals or corporations; Provided, That the claimant complies with the provisions of this chapter.

33 V.I.C. § 3408.

■ The Government of the Virgin Islands concedes (indeed insists) that the individual defendants were acting at all relevant times within the scope of their office or employment in the Bureau of Corrections, thus waiving section 2(b) immunity, and subjecting itself to liability on a *respondeat superior* basis for their "negligent or wrongful act[s] or omission[s]." The government's waiver, however, is qualified: "No judgment shall be awarded against the Government of the Virgin Islands in excess of $25,000." 33 V.I.C. § 3411(c).

In *Davis v. Knud–Hansen Memorial Hospital,* 635 F.2d at 186, this court rejected the contention that the grant by Congress of sovereign immunity in section 2(b) of the Organic Act protected employees of the Virgin Islands government sued in their individual capacity. The $25,000 limit in 33 V.I.C. § 3411(c), therefore, is also inapplicable to those defendants. Thus while the government's liability in tort based on Virgin Islands law is limited to $25,000, that of the individual defendants is unlimited.[3]

3. Under the Act of Jan. 14, 1981, No. 4521, § 1, 33 V.I.C. § 3414(a), the Government of the Virgin Islands must in certain cases pay the amount of an individual judgment against its employees up to $100,000. The judgment appealed from does not deal with the government's liability under this provision, which appears to be that of an indemnitor. Probably the matter of indemnity is one of agreement between the individual defendants and the Government, since the Attorney General appears on behalf of all defendants.

## B. Federal Law

If the judgment appealed from could be sustained on the basis of the Virgin Islands territorial law, it probably would be appropriate to refrain from discussing David's claim under section 1983. The judgment against the individual defendants and the government, however, is joint and several, in the amount of $200,000. Obviously, the judgment against the government exceeds the $25,000 limit in section 3411(c), and can stand in that amount only if authorized by federal law rather than territorial law.

In *Ocasio v. Bryan*, 374 F.2d at 11, this court rejected the contention that the enactment of section 2(b) of the Organic Act was a *pro tanto* repeal of the Civil Rights Act of 1871, holding that the Organic Act's reference to suits "against any officer or employee thereof in his official capacity" referred only to "official capacity" suits. Prior to *Ocasio v. Bryan*, the Government of the Virgin Islands probably could not have been sued in a section 1983 action. *See Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961) (governmental entity not a person within the meaning of section 1983). The statute was reinterpreted in *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See also Owen v. City of Independence*, 445 U.S. 622, 647–48, 100 S.Ct. 1398, 1413–14, 63 L.Ed.2d 673 (1980); *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed. 2d 555 (1980).

■ Prior to trial the Government of the Virgin Islands sought a ruling that under section 1983 its liability in tort was restricted to that consented to under the Tort Claims Act.[4] The government made this same contention in a post-trial motion, pursuant to Fed.R.Civ.P. 60(b). The district court rejected it, holding that the Government of the Virgin Islands was subject to the same liability in tort under section 1983 as any other governmental entity. The government renews that argument here. We hold that it was properly rejected. While *Ocasio v. Bryan* is technically not dispositive, that court's interpretation of section 2(b) of the Organic Act which it announced, permitting the application of section 1983 in the Virgin Islands, is strongly suggestive. Attributing to the 1954 Congress, which passed the Organic Act, an intention to confer on the Government of the Virgin Islands an immunity from tort actions based on the constitution and laws of the United States greater than that enjoyed by the states and their subdivisions would be inconsistent with section 1983 purposes. *See Moorehead v. Government of the Virgin Islands*, 19 V.I. 453 (D.C.V.I. 1983) (compliance with the Virgin Islands Tort Claims Act is not a prerequisite to suits against the government).

## C. The Verdict

The presence of the section 1983 claim against the government not only effectively removes the significance of the Tort Claims Act $25,000 limit on judgments, but also introduces a further complication—the difference in the standard of care applicable under section 1983. In *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Davidson v. Cannon*, 474 U.S. at 344, 106 S.Ct. at 668, the Supreme Court held that a plaintiff could not recover money damages for personal injuries under section 1983 on proof of merely negligent action under color of governmental authority. As we note in Part I above, the defendants requested and received an instruction that a section 1983 action for damages for personal injuries requires proof of "reckless disregard, which is so blatant that it almost measures up to intentional conduct." The govern-

4. *Monell v. Dept. of Social Services*, 436 U.S. at 691, 98 S.Ct. at 2036 holds that § 1983 liability of a governmental employer may not be predicated solely on a *respondeat superior* theory, but must involve action by a governmental employer pursuant to some governmental policy. The government did not request a *Monell* instruction, and did not move for a directed verdict or for judgment notwithstanding the verdict on the ground that the actions complained of were not taken pursuant to any governmental policy. The government, therefore, does not, and indeed could not, on appeal rely on any different factual predicate for its liability and that of its employees.

ment was satisfied with that instruction, and thus the judgment against it in excess of $25,000 must stand if there was evidence from which a jury could reasonably infer such reckless disregard for David's safety. If, on the other hand, the evidence would support a judgment of negligence only, the judgment against the individual defendant for $200,000 and against the Government of the Virgin Islands to the extent of $25,000 would stand, because the court's charge was more favorable to them than the negligence charge which was appropriate under the Virgin Islands law. Moreover, if the evidence was sufficient to establish a section 1983 violation by any of the individual defendants, the verdict against the government must stand since its liability depends upon the acts of its employees.[5]

## IV.

### Contentions on Appeal

#### A. The JNOV Motion

The defendants contend here that the district court erred in denying their motion for Judgment Notwithstanding the Verdict. In ruling on those motions the district court, consistent with its jury instruction, assumed that it should apply a recklessness standard rather than one of negligence.

■ Following Angel Soto's assault on David with a rock, Officer Smith, with knowledge of Soto's threat that "It's not done yet," with knowledge of Soto's extremely dangerous propensities, and anticipating that Soto would go to his room to obtain a weapon, permitted Soto to do exactly that. From the evidence the jury could reasonably infer that Smith, with full knowledge of the risk that Soto would return with a weapon and attempt to inflict further harm on David, deliberately chose to avoid confronting Soto, and, in the interest of his own safety proceeded to Control rather than to the dorm where Soto was headed. There is no question that Smith's conduct following the assault with a rock was in violation of the standard of care set forth in Restatement (Second) Torts

§§ 319–320. Thus the judgment against Smith must stand on that ground alone.

■ The jury was asked to impose liability on the stricter reckless disregard standard of care required in section 1983 actions. The government's liability in excess of $25,000 here depends only upon one of its agents violating that standard, because the government did not challenge the requirement of *Monell* that the agent was acting pursuant to government policy. If the evidence with respect to Smith's response to Soto's initial assault on David were more ambiguous, we would be faced with the challenging intellectual exercise of determining whether a properly charged jury could draw from the evidence an inference of negligence but not an inference of reckless disregard. The evidence is not ambiguous, however, and we have no difficulty in upholding the district court's conclusion that recklessness was a jury question. Smith witnessed the rock attack. He was fully aware of what could only be understood as a threat. He anticipated that Soto would attempt to obtain a weapon. He had three other officers on whom he could have called for assistance. Instead, he made a conscious choice not to pursue Soto and lock him down. The jury could find that he did so out of fear for his own safety. It is hard to imagine what additional evidence could be required to establish that a prison officer, having a duty to prevent Soto from inflicting harm on David, acted in reckless disregard of David's constitutionally protected rights.

Smith's testimony evidences a knowledgeable choice of a course of action in the face of a known risk, not forgetfulness or inadvertence. That risk was of such a nature and degree that to disregard it was a gross deviation from the standard of care a corrections officer should have exercised in the situation. Moreover, the sufficiency of the evidence of Smith's reckless disregard of David's constitutionally protected safety suffices to dispose of the government's contention that it was entitled to a Judgment Notwithstanding the Verdict.

**5.** This was the basis on which the case was submitted to the jury. *See supra* note 4.

This is so because the government, by failing to request a *Monell* instruction, consented to have its liability determined on the basis of its agents' conduct.[6]

■ With respect to Commissioner Potter and Warden Schrader, the evidence need not be analyzed in detail. It suffices to observe that from the evidence the jury could conclude they knew, or should have known, from business records kept for that purpose, that Soto posed an extreme danger to fellow inmates; that they could have isolated him, and did on some occasions; that staff members warned them that Soto posed a serious danger to guards and inmates; but that they nevertheless returned him to the general prison population, where perfectly foreseeable harm occurred. Since that evidence satisfies the standard of care applicable under Virgin Islands law, we need not consider whether, as the district court held, it also satisfies the *Daniels v. Williams* standard.

### B. Other Contentions

The government advances here, as in the district court, the contention that the Tort Claims Act is the exclusive tort remedy against it. We have discussed and rejected that contention in Part II above.

■ The individual defendants urge that the claims against them should be dismissed because they acted within the scope of their authority as employees of the Bureau of Corrections. This argument is essentially the same as that which we rejected in *Davis v. Knud–Hansen Memorial Hospital.*

■ Finally, the individual defendants urge that the trial court erred in failing to grant their motion for a Judgment Notwithstanding the Verdict on the ground that they were entitled to governmental immunity as a matter of law. This contention was not pleaded as an affirmative defense. Nor was this contention included as a ground for the defendants' motion for a

Directed Verdict. No charge on governmental immunity was requested. The contention therefore cannot be raised at this stage of the proceedings. Even if it could be, there is no evidence in the record supporting an immunity defense.

### V.

### Conclusion

The trial court did not err in denying each defendant's motion for Judgment Notwithstanding the Verdict, for none of the reasons advanced in support of that motion are factually or legally supportable. The judgment appealed from will therefore be affirmed.

---

**6.** Thus we have no occasion to consider whether the evidence permits a finding of governmental custom or policy as we have defined those terms. *See Partridge v. Two Unknown Police Officers,* 791 F.2d 1182, 1188–89 (5th Cir.1986);

*Estate of Bailey v. County of York,* 768 F.2d 503, 506 (3d Cir.1985); *Black v. Stephens,* 662 F.2d 181, 189–91 (3d Cir.1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982).