**Frank Lee MIKESKA, James Logan Diez, and Walter D. Williams, Plaintiffs–Appellants,**

v.

**James A. COLLINS, Director, Texas Dept. of Criminal Justice, Institutional Division, et al., Defendants–Appellees.**

No. 88–2276.

United States Court of Appeals, Fifth Circuit.

May 11, 1990.

Frank Lee Mikeska, Lovelady, Tex., pro se.

James Logan Diez, San Angelo, Tex., pro se.

Walter D. Williams, Lovelady, Tex., pro se.

Lawrence Wells, Asst. Atty. Gen., Jim Mattox, Atty. Gen., and Adrian Young, Austin, Tex., for defendants-appellees.

1. 1989 Tex.Gen.Laws 785.

Before POLITZ, DAVIS and DUHÉ, Circuit Judges.

POLITZ, Circuit Judge:

Four inmates of the Texas Department of Criminal Justice Institutional Division (TDCJ), formerly the Texas Department of Corrections,[1] invoked 42 U.S.C. § 1983, complaining of administrative punishment for refusing to work. After conducting a *Spears*[2] hearing, the district court dismissed the complaint as frivolous under 28 U.S.C. § 1915(d). We affirm.

### Background

Frank Lee Mikeska, Antonio Crecelius, James Logan Diez, and Walter D. Williams filed the instant complaint challenging TDCJ's treatment of inmates placed in administrative segregation for refusing to work. They complained of: overcrowded living conditions; excessive cell time; lack of recreation periods; being escorted to showers, meals and other destinations; erratic meal schedules; and the manner in which food is served. They also complained that inmates in this classification are subject to stricter rules, less eating time, and other restrictions regarding attendance at religious, group therapy, and education services. Diez also complains that the TDCJ work assignments constitute involuntary servitude proscribed by the Constitution. Proceeding *pro se*, complainants sought *in forma pauperis* status under 28 U.S.C. § 1915(a).

Complainants appeared at a *Spears* hearing and were given an opportunity to explain and expand their allegations in what effectively was an oral amendment of the complaint. Evaluating the complaint as thus amended the district court invoked 28 U.S.C. § 1915(d) and dismissed the suit as frivolous. A notice of appeal naming all four inmates, but signed only by Diez, was filed timely.

2. *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985).

*Analysis*

As a threshold consideration we must determine whether we have jurisdiction over this appeal. Although no party questions our jurisdiction, we are bound to do so *sua sponte*, for ours is a court of limited jurisdiction. *Thompson v. Betts*, 754 F.2d 1243 (5th Cir.1985). In this case part of our appellate jurisdiction turns on whether the notice of appeal brings before this court the claims of the three complainants who were named in but did not sign the notice. Our earlier decisions guide today's disposition of this issue.

In *McNeil v. Blackburn*, 802 F.2d 830 (5th Cir.1986), a *pro se* plaintiff-appellant timely filed an unsigned notice of appeal. We concluded that the notice was valid, invoking our jurisdiction. In reaching this conclusion we noted that the Federal Rules of Appellate Procedure do not require that notices of appeal be signed.[3] *McNeil* involved a sole plaintiff-appellant.

Subsequently we addressed a case involving three *pro se* complainants. In *Smith v. White*, 857 F.2d 1042 (5th Cir. 1988), Smith, one of the three complainants, signed and timely filed a notice of appeal which named all three complainants. The others did not sign and Smith is not an attorney. The clerk of the district court returned the notice of appeal for the signatures of the others. Smith responded by filing a second notice naming only himself as an appellant. Although the second notice was not filed until after the appeal period had expired, we held that Smith had taken a valid appeal. In dicta we expressed a preference for a rule which would provide that a *pro se* notice of appeal filed by one who is not an attorney would be valid only as to those appellant(s) signing, despite the listing of the nonsigning appellant(s) in the notice. *Smith*, 857 F.2d at 1043 (citing 9 *Moore's Federal Practice*, ¶ 203.17 at 3–73); *Covington v. Allsbrook*, 636 F.2d 63 (4th Cir.1980), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1990, 68

L.Ed.2d 305 (1981). *See also Theriault v. Silber*, 579 F.2d 302 (5th Cir.1978), *cert. denied*, 440 U.S. 917, 99 S.Ct. 1236, 59 L.Ed.2d 468 (1979).

The case at bar presents a factual situation different from that actually ruled on in either *McNeil* or *Smith*. The questions we address today, which we view as *res nova*, ask: In a *pro se* proceeding involving two or more potential appellants, if a person listed as an appellant does not sign the notice of appeal does that constitute a jurisdictional or a procedural defect? If procedural, is the defect curable, and if so, how? In answering these questions we must examine the contents and contours of Fed.R. App.P. 3(c), as recently interpreted by the Supreme Court in *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988).

In *Torres*, the name of one of 16 petitioners was inadvertently omitted from the notice of appeal, raising the question whether appellate jurisdiction existed as to that individual. As the Court emphasized, the omitted petitioner "was *never named* or *otherwise designated*, however inartfully, in the notice of appeal filed by the 15 other intervenors." *Torres*, 487 U.S. at 318, 108 S.Ct. at 2409, 101 L.Ed.2d at 292 (emphasis added). This failure to name an appellant, the Court reasoned, contravened the purpose underlying Rule 3(c): "[T]o provide notice both to the opposition and to the court of the identity of the appellant or appellants." *Id.* We perceive the motif princeps of *Torres*, and the jurisdictional threshold it defines, to be the requirement that the notice of appeal adequately inform the court and the appellee of the identity of the complaining appellants.

In the case at bar the identities of all who might appeal are known, for all complainants are listed in the notice of appeal. The jurisdictional threshold of *Torres* is thus satisfied. *See* 9 *Moore's Federal Practice*, ¶ 203.17 at 3–17 n. 17. Before us,

---

**3.** Fed.R.App.P. 3(c), which provides for the content of the notice of appeal, prescribes:

The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed

from; and shall name the court to which the appeal is taken ... An appeal shall not be dismissed for informality of form or title of the notice of appeal.

however, is a *pro se* filing by a complainant-appellant who is not an attorney, a fact which raises distinct systemic concerns because not all of the *pro se* litigants named in the notice of appeal have signed that instrument. First, the appellee and the court must know who is appealing. Further, although *pro se* litigants, particularly those proceeding *in forma pauperis*, do not have their desire to appeal tempered by potential litigation costs, as do other appellants, there are certain costs and risks, such as sanctions for a frivolous appeal, attendant upon *any* appeal regardless of the financial status of the appellants. It is therefore imperative that the record clearly and unmistakeably reflect the identity of those who are taking the appeal. A rule requiring the signature of each appellant in a multi-party *pro se* proceeding would achieve that end. Although not expressly required by Fed.R.App.P. 3(c), such a requirement would be totally consistent with the universal-signing directive of Fed.R. Civ.P. 11 which relevantly states: "A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper...".

■ We therefore hold that to be valid as to a specific appellant a multi-party *pro se* notice of appeal must be signed by that appellant. We further hold that if the notice is timely and validly filed as to any signing appellant, the procedural defect as to the non-signing appellants may be cured. Hereafter, whenever this court receives a multi-party *pro se* notice of appeal that fails to bear the signature of one or more of the persons listed as appellants therein, the clerk of this court shall inquire of each non-signing appellant their intention respecting the appeal. The original notice of appeal, if timely and validly filed as to any appellant, shall be deemed timely and validly filed as to any non-signer who affirms in writing to this court, within ten days of the posting of the clerk's inquiry, his or her unqualified intention to join the appeal. This affirmation must be signed by the subject appellant. *Cf. K.M.A., Inc. v. General Motors Acceptance Corp.*, 652 F.2d 398 (5th Cir.1981) (granting appellant corporation that filed a notice of appeal via a non-attorney 30 days in which to have an attorney file an appearance on its behalf, absent which appeal would be dismissed).

In light of our analysis of this record, we conclude that the interests of justice and prudent judicial economy do not require that we follow this procedure in this case. We opt to avoid any further delay in the final resolution of this dispute and therefore address the merits on all issues presented. In all like future cases, however, the foregoing procedure shall be utilized.

■ The appellants contend that the trial court erred in dismissing the complaint as frivolous. We do not agree. The district court is vested with broad authority to dismiss an IFP proceeding if from the pleadings, perhaps as expanded upon at an optional *Spears* hearing, the court concludes that the complainant advances a claim "based on an indisputably meritless legal theory," or "whose factual contentions are clearly baseless." *See Neitzke v. Williams*, — U.S. —, —, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338, 348 (1989).

■ In the case at bar the district court found no arguable basis for a federal claim. Inmates have neither a protectable property nor liberty interest in custodial classification. *Moody v. Baker*, 857 F.2d 256 (5th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 540, 102 L.Ed.2d 570 (1988). Classification of inmates, typically relegated to the broad discretion of prison officials, is a matter with which we are reluctant to interfere, except in extreme circumstances. *Young v. Wainwright*, 449 F.2d 338 (5th Cir.1971); *Jackson v. Cain*, 864 F.2d 1235 (5th Cir.1989). Further, the TDCJ classification plan under challenge was approved in *Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir.1982), *aff'd in part, vacated in part, reh'g denied in part*, 688 F.2d 266, *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). The plan addresses all constitutional guarantees of due process recognized in a prison setting, including notice, the right to be heard, periodic review, and an opportunity for relief.

■ Complainants further allege that their right to equal protection of the laws was violated by the administrative segregation because they were denied the same privileges, exercise periods, and education rehabilitative programs open to other prisoners. This claim also is without merit; there is no constitutional basis for the demand that prisoners in administrative segregation be accorded the same privileges as prisoners in the general population. *See Newman v. Alabama*, 559 F.2d 283 (5th Cir.1977), *cert. denied*, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978). Prison officials have the discretion to determine whether and when to provide prisoners with privileges which amount to more than reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety. This discretion is not absolute for it is subject to the constitutional requirement that significant and purposeful differences in treatment must have some rational basis and may not be wholly arbitrary and capricious. *Fulford v. King*, 692 F.2d 11 (5th Cir.1982).

All TDCJ inmates, unless specially classified, are expected to work. The refusal to work, by a group or even a single inmate, presents a serious threat to the orderly functioning of a prison. Any unjustified refusal to follow the established work regime is an invitation to sanctions. The TDCJ classification plan, including the restriction or forfeiture of certain privileges, is a rational technique for handling the problems presented by an inmate's unreasonable refusal to do assigned work. There is no merit in the assertion that the TDCJ classification plan is unconstitutional; nor is there any arguable merit in the allegations regarding the conditions of confinement, including that respecting religious opportunities.

■ In addition to the foregoing, Mikeska also invoked the eighth amendment, contending that to require him to work despite his medical condition constituted a violation of its protections. We are not persuaded. Mikeska allegedly suffers from a stomach ulcer. There is no suggestion, however, that prison officials knowingly assigned him to a work detail which they knew would aggravate his ailment. *Jackson v. Cain*, 864 F.2d at 1246 (When the type or work to which the convict is assigned admittedly worsens a pathological condition, the work must be deemed cruel and unusual punishment if it was assigned with knowledge of the medical condition and that the condition would be worsened thereby, or if the work was continued with the same knowledge.). Moreover, a review of the TDCJ medical records shows that Mikeska received adequate medical attention for his stomach problem. *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (holding that the eighth amendment protects prisoners only from deliberate indifference to their serious medical needs).

■ Finally, Diez contends that forcing inmates to work without pay constitutes involuntary servitude in violation of the Constitution. He is in error. The thirteenth amendment provides: "[n]either slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. Amend. XIII, § 1. We have held that compensating prisoners for work is not a constitutional requirement but, rather, "is by grace of the state." *Wendt v. Lynaugh*, 841 F.2d 619, 621 (5th Cir.1988) (quoting *Sigler v. Lowrie*, 404 F.2d 659, 661 (8th Cir.1968), *cert. denied*, 395 U.S. 940, 89 S.Ct. 2010, 23 L.Ed.2d 456 (1969)). Accordingly, because they have been convicted of a crime and are serving a sentence as punishment for that crime, complainants may not claim the protection of the thirteenth amendment.

The judgment of the district court is AFFIRMED.

W. EUGENE DAVIS, Circuit Judge, dissenting in part, concurring in part:

I disagree with the panel majority's determination that the three litigants who did not sign the notice of appeal invoked the jurisdiction of this court. The Supreme Court made it clear in *Torres v. Oakland*

*Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), that failure to comply with Federal Rule of Appellate Procedure 3(c) by identifying with certitude the identification of the appellants, is a jurisdictional defect. Rule 3(c) requires that "[t]he notice of appeal shall specify the party or parties taking the appeal." The question, as I see it, is whether Mikeska, Crecelius, and Williams, who neither personally signed the notice of appeal nor had it signed by a qualified representative, have specified their intention to take an appeal.

At least two other circuits have held that a notice of appeal not signed by the appellant or someone qualified to represent the appellant does not satisfy Rule 3(c). *See Carter v. CIR,* 784 F.2d 1006, 1008 (9th Cir.1986); *Covington v. Allsbrook,* 636 F.2d 63 (4th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1990, 68 L.Ed.2d 305 (1981). *See also Scarella v. Midwest Federal Savings & Loan,* 536 F.2d 1207, 1209 (8th Cir.1976). More importantly, this circuit took that position in *Smith v. White,* 857 F.2d 1042 (5th Cir.1988).

In that case, Smith, a non-attorney, filed a notice of appeal that named several parties as appellants, but only he signed the notice. The court dismissed the appeals of the non-signing parties:

> Of course, as to the other defendants, no timely notice of appeal was filed. "[U]nless a party is represented by an attorney, he must sign [the notice of appeal] himself, and ... a notice of appeal naming several appellants and signed by one of them, who is not an attorney, is ineffective to initiate an appeal on behalf of the nonsigners [citing cases]."

*Id.* at 1043, *citing* 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* § 203.17 at 3–73 (2d ed. 1980) (brackets in original). The *Smith* court relied on *Covington v. Allsbrook,* which in turn held that a notice of appeal not signed by some of the pro se litigants seeking to appeal did not comply with Rule 3(c). The *Smith* court did note that the dismissal of the appeal worked no prejudice because it had become clear that

the non-signing parties were not attempting to appeal; but this does not detract from its independent holding that the parties who had not signed the notice of appeal, or had it signed by a qualified representative, had *failed* to appeal.

Had the notice of appeal been signed by an attorney representing the multiple appellants, Rule 3(c) would be satisfied because such a notice would specify the intent of all appellants to appeal. But the law does not permit Diez to assume the responsibility of representing his fellow inmates. *Smith,* 857 F.2d at 1043; *Covington,* 636 F.2d at 64.

Thus, I conclude that the litigants who did not sign the notice of appeal failed to invoke the jurisdiction of this court under Rule 3(c); accordingly, I would dismiss the appeal for lack of jurisdiction as to Mikeska, Crecelius and Williams.

I fully concur in the majority's disposition of Diez's appeal.