**Thinh Minh LUONG, ID No.
A–0223920, Plaintiff,**

v.

**David HATT, et al., Defendants.**

**No. 5:97–CV–165–BA.**

United States District Court,
N.D. Texas,
Lubbock Division.

Sept. 11, 1997.

Thinh Minh Luong, Spur, TX, pro se.

### ORDER OF DISMISSAL

WARNICK, United States Magistrate Judge.

The Plaintiff, Thinh Minh Luong, is proceeding pro se. Plaintiff has filed an original complaint. The court held a *Spears* hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir.1985), and a judicial screening pursuant to 28 U.S.C. § 1915A(c) on June 11, 1997.

Following the original complaint, a *Spears* hearing and a judicial screening the Court entered a Proposed Sua Sponte Dismissal. Plaintiff was given a thirty day opportunity in which to file any response he might have to such proposed dismissal. Plaintiff has filed no response to the proposed dismissal.

Plaintiff basically has one complaint, but seeks two major categories of relief. Plaintiff is a convicted felon from the State of Hawaii, and is being housed in the Dickens County Correctional Center. The Dickens Center is a privately owned and operated prison maintained by the Bobby Ross Group, Inc. At the present time it is housing some prisoners from the State of Hawaii. Plaintiff alleges after he was incarcerated in Hawaii he was tagged by the other inmates as a snitch. Plaintiff at his *Spears* Hearing admitted he had in the Hawaii prison informed the authorities about contraband being kept by two other prisoners. As a result, Plaintiff was subjected to threats and assaults in Hawaii. He was first transferred to the Bobby Ross Group facility at Newton, Texas, where he was held for a time. Then on August 15, 1996, he was transferred to the Dickens County facility. Plaintiff said shortly after he arrived he was again threatened by Hawaiian inmates who were friends, or even perhaps gang members with the two prisoners on whom he snitched at the Hawaiian prison. Plaintiff is alleging a failure of the Dickens County authorities to protect him from physical assaults, and danger at the hands of the Hawaiian inmates in the Dickens Center who are friends or associates of the two prisoners in Hawaii. Plaintiff seeks to be transferred from the Dickens County facility to some safe place, and also to recover damages for the assaults which he alleges and testified at the *Spears* Hearing, have taken place while he has been housed in the Dickens County facility. The Court has available the Plaintiff's original complaint, the *Spears* Hearing testimony, and his inmate medical records from the Dickens County facility.

It is, undisputed on August 17, 1996, the Dickens County authorities were put on notice by the Plaintiff of inmate threats against him because he was accused of being a snitch. On some date in September 1996 (the date is unknown to the Plaintiff and he did not seek medical care so there are no records of it) he was, according to him, attacked by some other inmates while he was sleeping. He alleges they stomped on his face, and jumped on him. He said he received a bleeding tongue, and an injured shoulder. Plaintiff at the *Spears* Hearing testified these injuries lasted only a couple of days. Plaintiff testified about 2 or 2/1 2 months after the September incident, he was again attacked by inmates. He says his leg turned blue, apparently from a bruise. He said after the incident Sergeant Tagle put him on the floor and cuffed him, and his hands turned red and were swollen. In the medical records for October 29, 1996, it is shown he had been engaged in an altercation with other inmates. There is no mention of his leg. Medical records indicate he had a minor abrasion on his right forearm and chest, and a contusion on the left jaw with a slight swelling. Plaintiff said the red swollen wrist lasted for 2 or 3 days. The medical records also indicated on December 13, 1996, he had been in a fight with other inmates, and had a tender area on his skull. Plaintiff alleged and said on January 20, 1997, while he was showering he was attacked in the shower by another inmate who had knife or a shank. According to the records he was seen at medical on January 26, 1997. He reported no injuries and medical indicated he had no injuries from this altercation. Plaintiff in his pleading alleged on April 2, 1997, while he was under escort to and from medical by Correction Officer Cachcino he was attacked by other inmates with a broom stick. At the *Spears* Hearing he said this was March 26 or 27. According to the medical records he was seen for those injuries on March 31, 1997. Plaintiff said he had a cut on the face, bloody nose, cuts in his mouth, a long red mark on his leg, and his tongue was cut. The medical reported he had scratches to his face and along his nose. The medical also reported on April 2, 1997, he made a complaint about his wrist.

### TRANSFER TO OTHER FACILITIES

■ Pursuant to *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the decisions of a state prison administration are given wide discretion regarding the operation of prison facilities. In questions pertaining to prison administration ac-

484

cording to *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir.1990), and following the lead of the Supreme Court there is established a "minimum intrusion policy," into prison administration decisions. Classification of prisoners is left to the discretion of prison officials, *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir.1983), and *McCord v. Maggio, supra*, at 1251.

█ If a prisoner is complaining about a transfer from one prison to another, then he only has a valid complaint if he can. demonstrate a liberty interest in remaining in the prison where he was initially incarcerated, *Dzana v. Foti*, 829 F.2d 558 (5th Cir.1987). Even if the prisoner is transferred to another more confining prison for punishment reasons it will not invoke the procedural protections of the Due Process Clause, *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), and *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Under the holding of *Mikeska, et al. v. Collins*, 900 F.2d 833, 836 (5th Cir.1990) [1] there is no Civil Rights violation, when the complaint is based solely on a transfer or lack of a transfer. Plaintiff must demonstrate a significant and purposefully different manner of treatment from other similarly situated prisoners. *See also Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), and *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

█ Thus, the Court is in no position to order a transfer of the inmate to another facility. According to the records he has for sometime now been held in protective custody to keep other inmates away from him.

### FAILURE TO PROTECT

It has been routinely held if prison authorities are on notice one inmate is personally subject to possibly being physically harmed, or if they are on notice a particular inmate will assault other inmates without any specific person in mind, then they have an obligation to protect those inmates who are the object of direct threats or possible violence from another inmate, *Stokes v. Delcambre*, 710 F.2d 1120, 1124 (5th Cir.1984), and *Jones v. Diamond*, 636 F.2d 1364, 1374 (5th Cir.), cert. dismissed, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). *See also Anderson v. Gutschenritter*, 836 F.2d 346 (7th Cir.1988), *Frett v. Government of the Virgin Islands*, 839 F.2d 968 (3rd Cir.1988), *Morales v. New York State Department of Corrections*, 842 F.2d 27 (2nd Cir.1988), and *Smith–Bey v. Hospital Administrator*, 841 F.2d 751 (7th Cir.1988).

The Plaintiff being a convicted prisoner, then he is protected by the Eighth Amendment to the U.S. Constitution. Under the holdings in *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), and *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), an inmate is protected from a prison official's deliberate indifference to a substantial risk of serious harm. The Supreme Court at its 1993 term certified the required protection for prisoners from fellow prisoner violence, *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Supreme Court in *Farmer v. Brennan, id.*, defined the term, "deliberate indifference". This was a civil suit brought by a prisoner alleging federal prison officials violated his Eighth Amendment rights by their deliberate indifference to his safety. The Court stated, 511 U.S. at 832, 114 S.Ct. at 1976, "in particular, as the lower courts have uniformly held, and as we have assumed, '[p]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.'" (citations omitted). In the footnote the Supreme Court notes conformity with this holding in the Fifth Circuit case of *Alberti v. Klevenhagen*, 790 F.2d 1220, 1224 (5th Cir.), reh. denied, 799 F.2d 992 (5th Cir.1986). To sustain a claim of a failure to protect there must be a wanton or deliberate attitude on the part of the officer. The Supreme Court held in *Farmer v. Brennan, supra*, the Eighth Amendment test with

1. An appeal as to three of the appellants was dismissed, *Mikeska v. Collins*, 928 F.2d 126 (5th Cir.1991). That new opinion does not affect nor alter the rule of law for which *Mikeska v. Collins*, is cited at 900 F.2d at 836.

regard to deliberate indifference required a "consciousness of a risk". The Court held a prison official would be subject to liability if he failed to take an action despite his knowledge of a substantial risk of harm known to him or if the risk was so obvious it should have been known. The official does not need to possess specific knowledge harm would actually befall a *named* inmate. The latter negates the head in the sand or ostrich defense.

*Horton v. Cockrell*, 70 F.3d 397 (5th Cir. 1995), *reh. denied* (1996), was a failure to protect case in which the assault was coming from *one specific* inmate against another inmate, and the prison authorities were on notice of this threat. Plaintiff at bar offers no designation of specific inmates who represented a threat to him.

■ Even if conceded, arguendo, Plaintiff has demonstrated a failure to protect, there is a new issue to be confronted in all prisoner litigation. Pursuant to the latest statutory provision, see 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act to assert a claim for which relief could be granted there must be a physical injury, there can be no recovery for mental or emotional injury suffered while in custody without such a physical injury. The Fifth Circuit in *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997), interpreted this section of the law. The Court said under the Eighth Amendment, 1997e(e), excludes from Constitutional recognition a de minimis injury. In *Siglar, id.*, the injury was a sore bruised ear which lasted for about 3 days. The Court found it to be a de minimis injury. In *Horton v. Cockrell*, 70 F.3d at 401, there is no discussion of what the quantum of the injury was. There was simply a conclusory statement he had alleged an injury which constituted serious harm. He was also permitted to proceed on a failure to protect because he *could have* been severely injured in either of the two altercations alleged. However, the law has now been changed by 1997e(e), and an actual physical injury is required to sustain a claim for relief.

■ Reviewing the complained of injuries in the case at bar, Plaintiff said on the September incident he had a bleeding tongue and injured shoulder which lasted only a couple of days. In the April 29 matter he had minor abrasions on his right forearm, chest, and a contusion with slight swelling of the left jaw. He also said he had red swollen wrists which lasted two or three days. In the January 20 or 27, 1997, incident in the shower he said he received no injuries. Then in the incident with the broomstick in late March, whatever the date, he said he had a cut on his face, bloody nose, tongue cut, cuts in his mouth, and a long red mark on his neck. Prison medical records indicate he only had scratches to his face and along his nose. Therefore, under the *Siglar v. Hightower, supra*, test his injuries are either nonexistent or de minimis. The closest he can come to having an injury which might meet the test is from the broomstick assault in late March 1997. However, this Court can rely on the prison medical records including the examination by the prison medical authorities, which showed only scratches to the face and along the nose. The prison medical records with regard to sick calls, examinations, diagnosis, medications, etc., may be utilized to rebut a claim of deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991), *Mendoza v. Lynaugh*, 989 F.2d 191, 193–95 (5th Cir.1993), and *Banuelos v. McFarland*, 41 F.3d 232 (5th Cir. 1995). Otherwise he never had any injury which lasted longer than two or three days and then it went away as healed. It is also noted on December 13, 1996, the medical records indicate he was in a fight, which he has not claimed, and had a little tenderness on his skull. There is also a medical report from December 20, 1996, following an altercation with inmates. The examination showed no cuts, bruises or swelling on the scalp area. However, he had cuts, scratches, abrasions, lacerations, redness and bruises to his back, chest and right arm. There appeared to be some trauma to the left leg, and a right ankle complaint. He was given an ice pack and kept under twenty-four hour observation. Thus, Plaintiff has not alleged an injury of such consequence that an objective view of it would show he had suffered some lasting disability, or that it was an injury which would cause severe pain over any peri-

od of time. Cuts, scratches, abrasions, etc., cause some immediate pain and perhaps slight soreness, but everyday experience teaches those kinds of injuries are tolerated by people, and go away, as described by the Plaintiff himself, in two or three days.

The Fifth Circuit in *Siglar v. Hightower, supra* offered no definition of what is a physical injury, or a de minimis injury. The only standard offered was a de minimis injury was not sufficient to carry the day. A claim by a prisoner of an injury in prison he received in an unprovoked assault or excessive use of force by the guards or a failure to protect from other inmates should utilize the same approach to the nature of the injury and whether it actually falls under the new statute with regard to being a physical injury as to how people in a free world setting in exercising their day-to-day medical care would treat such injuries. Just as an example, there are numerous scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek professional medical care. Thus, an appropriate de minimis standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice? In the prison setting in the Texas Department of Criminal Justice–Institutional Division, and in other prisons like this private prison, after an altercation the correction officers are usually required regardless of observable injuries, no injuries, etc., to take the inmate to the prison infirmary to have an examination to determine if the prisoner received any physical injury requiring professional medical care. Thus, the mere reporting of cuts and abrasions, or swollen wrists by the medical personnel does not prove the inmate has received a physical injury which would measure up to the standards set out in the current statute, 42 U.S.C. § 1997e(e), and *Siglar v. Hightower, supra.*

A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed to rise about de minimis, would under *Siglar v. Hightower, supra,* require more than the types and kinds of bruises and abrasions about which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e).

Therefore, (1) Plaintiff is not entitled to a transfer or reclassification order from this Court, (2) has not stated a claim for which relief could be granted with regard to failure to protect, and (3) there is a lack of physical injury of such nature as to constitute a claim for which relief could be granted, this complaint is subject to dismissal, Rule 12(b)(6), FRCP, 42 U.S.C. § 1997e(c)(1), and (2), 28 U.S.C. § 1915(c)(2), and 28 U.S.C. § 1915A(b).

It is, therefore, Ordered this Civil Rights Complaint is dismissed with prejudice and all relief sought therein is denied.

It is, further Ordered all pending Motions not previously considered by this Court are hereby overruled and denied.

This is a consent case assigned to the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c) with authority to enter Judgment. Any appeal would be to the Court of Appeals for the Fifth Circuit in accordance with 28 U.S.C. § 636(c)(3).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**