**Ray C. PATRICK, Plaintiff,**

**v.**

**Dennis STAPLES, Mark Haley, Robert Kuhn, T. Nornes, D. Bengert, Doctor Bautista, Doctor Paz Sango, R.N.B. Patterson, Doctor Raymond O'Brien, Individually and Official capacities, Dr. Villoso, A. Metzcus, R.N. Eelee, Ofc. Taippan, Defendants.**

**Civ. No. S90–447.**

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 31, 1991.

Ray C. Patrick, pro se.

Thomas D. Quigley, Indianapolis, Ind., for defendants.

## ORDER

ALLEN SHARP, Chief Judge.

This case was referred to Magistrate/Judge Robin D. Pierce for a Report and Recommendation which was duly filed on September 30, 1991. No objections have been filed thereto. Magistrate Pierce has prepared an elaborate, 45–page Report and Recommendation so thorough and carefully crafted that this court has determined to publish the same with this court's whole-hearted and complete approval. As this massive Report and Recommendation clearly indicate, the disposition and management of *pro se* prisoner litigation is just plain hard, time-consuming work. The sooner that those who record time consumption probabilities to such cases learn that lesson the better all of us in the federal trial judiciary will be.

The Report and Recommendation is in all things approved. Such other proceedings that must necessarily follow therefrom will go forward with all deliberate speed. IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

ROBIN D. PIERCE, United States Magistrate Judge.

This case is before the court on defendants' motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiff, Ray Charles Patrick, is an inmate at the Westville Correctional Center ("WCC") in Westville, Indiana. He filed the present action, *pro se,* on September 11, 1990, and was granted leave to file a second amended complaint on February 4, 1991. His second amended complaint, which raises federal claims under 42 U.S.C. §§ 1981 through 1991 "et seq.," along with certain pendent claims under state law, alleges that the 13 named defendants, various medical personnel and officers or employees at the WCC, violated his constitutional rights under the First, Fourth, Fifth, Eighth, Thirteenth and Fourteenth Amendments, by conspiring to deprive him of medical care, interfering with his mail, and subjecting him to involuntary servitude, racial discrimination and cruel and unusual punishment, among other things. Of Mr. Patrick's myriad claims, most are found to be baseless and frivolous, but some survive examination under Rule 12(b)(6) standards.

### *12(b)(6) Standard*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of complaints that state no actionable claim. When reviewing *pro se* complaints, the court must employ standards less stringent than if the complaint had been drafted by counsel. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Jones v. Morris,* 777 F.2d 1277 (7th Cir.1985). The court must accept as true all well-pleaded factual allegations and inferences which may reasonably be drawn from those facts. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Corcoran v. Chicago Park District,* 875 F.2d 609, 611 (7th Cir.1989); *Gomez v. Illinois State Board of Education,* 811 F.2d 1030 (7th Cir.1987); *Vaden v. Village of Maywood, Ill.,* 809 F.2d 361, 363 (7th Cir.), cert. denied, 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987); *Hampton v. City of Chicago,* 484 F.2d 602 (7th Cir.1973), cert. denied, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974). At the same time, the court is not required to " 'ignore any facts set forth in the complaint that undermine the plaintiff's claim....' " *Martin v. Davies,* 917 F.2d 336, 341 (7th Cir.1990), quoting *Gray v. Dane County,* 854 F.2d 179, 182 (7th Cir.1988). A motion to dismiss will not be granted under these circumstances unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 78

S.Ct. 99, 2 L.Ed.2d 80 (1957); *Illinois Health Care Ass'n v. Illinois Dept. of Public Health,* 879 F.2d 286, 288 (7th Cir. 1989); *Gomez v. Illinois State Board of Education,* 811 F.2d 1030 (7th Cir.1987); *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *French v. Heyne,* 547 F.2d 994 (7th Cir. 1976). A plaintiff may not avoid dismissal, however, merely by attaching bare legal conclusions to narrated facts which fail to outline the basis of his claims. *Perkins v. Silverstein,* 939 F.2d 463, 469, 472 (7th Cir.1991); *Strauss v. City of Chicago,* 760 F.2d 765, 767–68 (7th Cir.1985); *Sutliff, Inc. v. Donovan Companies,* 727 F.2d 648, 654 (7th Cir.1984).

Even under the notice pleading of the Federal Rules of Civil Procedure and the liberal interpretation given to *pro se* pleadings, a complaint must include allegations respecting all material elements of all claims asserted. *Papapetropoulous v. Milwaukee Transport Services,* 795 F.2d 591, 594 (7th Cir.1986); *Powe v. City of Chicago,* 664 F.2d 639 (7th Cir.1981); *Cannon v. Univ. of Chicago,* 648 F.2d 1104 (7th Cir.), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981). Bare legal conclusions attached to narrated facts will not suffice. *Strauss,* 760 F.2d at 768; *Sutliff,* 727 F.2d at 654. A Rule 12(b)(6) motion to dismiss need not be wholly granted or denied, but may be granted as to part of a complaint and denied as to the remainder. *Fielding v. Brebbia,* 399 F.2d 1003, 1006 (D.C.Cir.1968); *Drewett v. Aetna Casualty & Surety Co.,* 405 F.Supp. 877, 878 (W.D.La.1975).

### The Second Amended Complaint

The factual averments set forth in Mr. Patrick's second amended complaint (here- inafter referred to as "the complaint"), though far from clear, may be described as follows: Mr. Patrick is black; defendants Staples, Haley, Kuhn, Nornes and Bengert are white. Mr. Patrick alleges that they discriminated against him because of his race.

On May 23, 1990, Mr. Patrick informed defendants Haley, Kuhn and Staples that he had "scoliosis of the spine," together with "pain and fatigue." According to Mr. Patrick, the INH medication he had been taking for his tuberculosis caused him to experience dizziness, fatigue and vomiting.[1] Although he showed Haley, Kuhn and Staples his health report from the LaPorte County Health Department, they ignored his documentation and complaints and assigned him to work in the prison kitchen "pending medical AM." (See Classification Hearing Report attached to the Complaint).

Mr. Patrick alleges that defendant Staples, the kitchen supervisor, "sit's on the unit team, so, he can judge who would be the most ignorant and docile, (mostly Black's) to work in the kitchen, without giving him (and T. Nornes) no trouble, with the coercion, if plaintiff doesn't work, defendants will write conduct reports' (attached) and send plaintiff to violated or violent, and less desirable G.S.C."

Drs. Bautista, Sango, Villoso and O'Brien, along with Nurse Patterson, failed to conduct a proper medical evaluation of Mr. Patrick. Though aware that he was a carrier of tuberculosis, they forced him to work in the kitchen anyway, thereby violating the "agreed entry" in the case of Anderson v. Orr.

Although Mr. Patrick told Drs. Bautista and Sango and Nurse Patterson that he

---

**1.** One of the documents attached to Mr. Patrick's complaint is a form letter from the LaPorte County Health Department containing information and advice about INH medication for persons who have had a positive reaction to the tuberculin skin test. Among other things, the letter states that "[a] positive skin test indicates the presence of infection, or that a person has live Tuberculosis germs somewhere inside his body. It does *not* mean he is ill or that he can spread the germ to others." The letter further states that the prevention of actual disease in an infected individual by medication "involves the use of a single, inexpensive drug called Isoniazid (INH)." According to the letter, "INH acts by diminishing the number of germs in the person taking the drug. It is in reality, the treatment of infection so that the TB disease does not develop." The letter also notes that "INH has few side effects, and any which do occur are readily reversible."

"had pain climbing to a top bunk," they told him he did not meet the criteria for a bottom bunk and handed him a bottom bunk criteria order or policy signed by Anthony Metzcus [2], the prison's health care administrator. Dr. O'Brien diagnosed Mr. Patrick's scoliosis, but would not order a back brace and orthopedic footwear, provide Mr. Patrick with a bottom bunk pass, or restrict his "job limitation's."

On "different occasions" Mr. Patrick talked to Daniel Bengert, his dorm counselor, and informed Bengert that he had tuberculosis. Bengert, however, refused to look at Mr. Patrick's medical documentation, refused to talk to him about his medical disabilities, and ordered him out of his office. Defendant Haley, also a dorm counselor, would not consider Mr. Patrick's medical documentation and told Patrick to leave his office. On May 25, 1990, Haley allegedly asked Patrick "why do you people always have something to complaint about—you got it better here than you did on the street's—and go get some more pictures taken—I'm sure there's some contraband photo ticket's somewhere you ought to get—your family won't know the difference."

On June 22, 1990, while Mr. Patrick was working in the kitchen, he heard Dennis Staples tell Officer Nornes "to get that Black-ass son-of-bitch." Nornes replied, "Yea, He's (plaintiff) a smart Fucking Nigger—well i'll take care of him—and his smart ass."

On July 20, 1990, Mr. Patrick saw Dr. Villoso about an appointment with Dr. O'Brien. According to Patrick, Dr. Villoso "said there was nothing wrong with me, I told her i was in pain in my stomach area, and that my spine was hurting me, and that i needed a no-work pass from the kitchen, as i have tuberculosis, and i may be exposing other, or even contaminating the food when i cough around it." Dr. Villoso allegedly refused to get Mr. Patrick an appointment with Dr. O'Brien, felt Mr.

Patrick's stomach area, told him that there was nothing wrong with him, indicated that he would be okay, refused to provide him with a "no-work pass," and told him to go back to work.

On July 31, 1990, while Mr. Patrick was at sick call, Officer Tappan interfered with his "medical," called him "a stupid fucking N———," said that he didn't need any medication, and told him "—— get the f—— out of here...." Mr. Patrick notes that Tappan "is a white guard, and i am black."

On August 7, 1990, while Mr. Patrick was at sick call, he noticed that his medical packet contained a "yellow form 5741 envelope" along with a letter he had written to Dr. O'Brien on July 23, 1990. When he asked what his letter to Dr. O'Brien was doing in his medical packet, he was told that the letter had been opened by Anthony Metzcus (the prison's health care administrator).

On August 10, 1990, again while Mr. Patrick was on sick call, "Nurse Elee" (apparently referring to Miriam Ely, R.N.) refused to give him a limited duty work pass even though he told her that he was in pain, that his back hurt, that he had heartburn and dizziness, and that he was vomiting. According to Mr. Patrick "she said there was nothing wrong with me, just go take a shower and i would feel better, this was a racial slur upon me—she is white. she refused to give me a lay-in, until i could see a doctor, or referral to doctor, told me to go back to work, and didn't care if i was in pain and sick."

Mr. Patrick also alleges that on the morning of August 10, 1990, Officer Nornes, "with conspiracy to deprive me of my medication, went around to all of the other kitchen-inmate-workers, and told them to go get there medication, she never told me to go get mine (medication) and after everyone else came back, i asked her when was i am going to go to medication, Nornes said: I'll let you know—go back to

---

**2.** Attached to Mr. Patrick's complaint is a memorandum dated April 22, 1988, from Mr. A. Metzcus, health care administrator. The memorandum, addressed to "All Concerned—Health Care," indicates that bottom bunk passes were to be issued only for the following documented medical conditions: epilepsy, diabetes, incapacitated fracture, psychotropic medications, physically handicapped and severe cardiac or HTN.

work; about a half of hour later, one of the inmate who alread had medication, told me they alread went to med." When Mr. Patrick asked Nornes if he could go get his medication and indicated that he was sick and in pain, she replied, "Not now—I'll let you know—go back to work." Mr. Patrick alleges that he never did get his medication that day, and that he was vomiting, dizzy, fatigued and in pain "all day."

Lastly, Mr. Patrick alleges that on some occasions when he went to sick call Nurse Ely refused to see him, and that on January 22, 1991, "she wouldn't see me again."

### I. Official Capacity Claims

■ Mr. Patrick's original complaint indicated that he was suing the defendants in both their official and individual capacities. Although his second amended complaint omitted any such reference to the nature of his claims, he filed a document on May 13, 1991, entitled "supplemental pleading," confirming that all defendants were being sued in both their official and individual capacities. To the extent that Mr. Patrick has attempted to assert damage claims against the defendants in their official capacities, his suit is, in effect, an action against the state which would be barred by the Eleventh Amendment. *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir.1987) ("A suit for damages against a state official in his or her official capacity is a suit against the state for Eleventh Amendment purposes."). *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662, reh'g denied, 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974); *Duckworth v. Franzen*, 780 F.2d 645 (7th Cir.1985), cert. denied, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986); *Hendrix v. Evans*, 715 F.Supp. 897 (N.D.Ind.1989); *Cameron v. Metcuz*, 705 F.Supp. 454 (N.D.Ind.1989); *Yarber v. Indiana State Prison*, 713 F.Supp. 271 (N.D.Ind.1988). Accordingly, Mr. Patrick's damage action against the defendants in their official capacities must be dismissed for lack of subject matter jurisdiction. *See Akins v. Bd. of Gov. of State Colleges & Univ.*, 840 F.2d 1371, 1375 (7th Cir.1988)

(referring to Eleventh Amendment as "jurisdictional bar" to official capacity suit for damages); *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1035 (7th Cir.1987) (Eleventh Amendment provides "fundamental limitation on federal jurisdiction").

■ In addition, it is clear that Mr. Patrick cannot maintain an action against the defendants in their official capacities for damages or retroactive relief under 42 U.S.C. § 1983. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *See Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *AFCME v. Tristano*, 898 F.2d 1302, 1306 (7th Cir.1990). Accordingly, all damage claims against the defendants in their official capacities must be dismissed for lack of jurisdiction over the subject matter.

### II. Claims Under 42 U.S.C. §§ 1981, 1982, 1984 and 1987 through 1991

■ The complaint, though liberally construed in accordance with *Haines v. Kerner*, 404 U.S. at 520–21, 92 S.Ct. at 596, fails to state a claim for which relief can be granted under 42 U.S.C. §§ 1981, 1982, 1984, or 1987 through 1991. None of these statutory provisions have any application or potential application to any of Mr. Patrick's factual allegations. Section 1981 "prohibits discrimination only in the making and enforcement of contracts." *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989). Section 1982, by its terms, addresses racial discrimination only in the inheritance, purchase, lease, sale, holding, and conveyance of real and personal property. *See City of Memphis v. Greene*, 451 U.S. 100, 101 S.Ct. 1584, 67 L.Ed.2d 769 (1981). Although apparently overlooked by Mr. Patrick, § 1984 is no longer viable. Section 1987 authorizes and requires certain federal officers to institute prosecutions for violations of various civil rights statutes, and does not provide for a private cause of

action. Section 1988 is only concerned with the award of attorney's fees and costs to the prevailing party in a civil rights action and, in any event, the Supreme Court has held that the statute does not authorize an award of attorney's fees in favor of a *pro se* litigant such as Mr. Patrick. *Kay v. Ehrler*, —— U.S. ——, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991). Section 1989 authorizes the appointment of magistrates. Section 1990 requires that every marshal and deputy marshal obey and execute warrants or other process. And finally, Section 1991 authorizes the payment of fees to persons appointed to execute process under § 1989. Mr. Patrick's claims under §§ 1981, 1982, 1984 and 1987 through 1991 are frivolous.

### III. Claims Under 42 U.S.C. §§ 1985 and 1986

▆▆▆ The complaint also fails to state a claim under 42 U.S.C. §§ 1985 and 1986. Initially, the court notes that subsections (1) and (2) of § 1985 have no possible application to any of Mr. Patrick's factual allegations. Those subsections, respectively, are concerned with conspiracies to prevent persons from accepting or holding public office and conspiracies to interfere with the participation of parties or witnesses in court proceedings (obstruction of justice). Only § 1985(3) has any potential application to the facts which Mr. Patrick has alleged. This statute provides:

> If two or more persons ... conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities ... from giving or securing to all persons ... the equal protection of the laws; ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

In essence, this statute provides a cause of action for racially motivated conspiracies to deprive persons of "the equal protection of the laws, or of equal privileges and immunities under the laws...." *Stevens v. Tillman*, 855 F.2d 394, 403–04 (7th Cir.1988); *Askew v. Bloemker*, 548 F.2d 673 (7th Cir. 1976). Section 1985(3) does not, in itself, create any substantive rights. *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979); *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983). Rather, the statute only provides a remedy for violation of the rights that it designates. *Griffin v. Breckenridge*, 403 U.S. 88, 101, 91 S.Ct. 1790, 1797, 29 L.Ed.2d 338 (1971); *Stevens*, 855 F.2d at 404; *Munson v. Friske*, 754 F.2d 683, 694 (7th Cir.1985). To prove a violation of § 1985(3) a plaintiff must show that "(1) two or more defendants conspired; (2) for the purpose of depriving, either directly, or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; (3) one or more of the conspirators acted in furtherance of the conspiracy; and that (4) such act injured a person or his property or deprived him of exercising any right or privilege of a citizen of the United States." *Munson*, 754 F.2d at 694, *citing Griffin*, 403 U.S. at 102–03, 91 S.Ct. at 1798–99. *See Quinones v. Szorc*, 771 F.2d 289, 291 n. 1 (7th Cir.1985); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1233 (7th Cir. 1984).

In the present case, Mr. Patrick's complaint makes no allegation whatever as to the existence of a racially motivated or class-based conspiracy. His factual narrative leads off with the conclusory assertion that defendants Staples, Haley, Kuhn, Nornes and Bengert discriminated against him because he is black. Beyond this, the complaint alleges that defendant Staples, the kitchen supervisor, sits on the unit team so "he can judge who would be the most ignorant and docile, (mostly Black's) to work in the kitchen, without giving him (and T. Nornes) no trouble, with the coercion, if plaintiff doesn't work, defendants will write conduct reports' (attached) and send plaintiff to violated or violent, and

less desirable G.S.C." In addition, the complaint alleges that on May 25, 1990, defendant Haley asked Mr. Patrick "why do you people always have something to complaint about—you got it better here than you did on the street's—and go get some more pictures taken—I'm sure there's some contraband photo ticket's somewhere you ought to get—your family won't know the difference." Further, it is alleged that on June 22, 1990, while Mr. Patrick was working in the kitchen, he overheard Dennis Staples tell Officer Nornes "to get that Black-ass son-of-bitch." Nornes allegedly replied, "Yea, He's (plaintiff) a smart Fucking Nigger—well i'll take care of him—and his smart ass." The complaint also alleges that on July 31, 1990, while Mr. Patrick was at sick call, Officer Tappan interfered with his "medical," called him "a stupid fucking N——," said that he didn't need any medication, and told him "—— get the f—— out of here ..." Mr. Patrick notes that Tappan "is a white guard, and i am black." Lastly, the complaint alleges that on August 10, 1990, again while Mr. Patrick was on sick call, Nurse Ely told him there was nothing wrong with him and advised him to "just go take a shower." According to Mr. Patrick, this was a "racial slur upon me—she is white."

These are the only allegations in the complaint which, in any way, could be construed as suggesting that certain actions by some of the defendants may have had a racial or class-based animus. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987) (allegations of racial slurs sufficient to show racial animus); *East v. City of Chicago*, 719 F.Supp. 683, 687 (N.D.Ill. 1989) (racial epithets and slurs may imply racial animus); *Hawkins v. City of Chicago*, No. 88 C 7032, slip op., 1989 WL 10875 (N.D.Ill. Feb. 2, 1989) (LEXIS, Genfed Library, courts file) (same). But it is nowhere alleged that any of the defendants participated in a *conspiracy* to discriminate against Mr. Patrick *because of his race*. Indeed, the complaint does not contain even a conclusory allegation of a racially motivated conspiracy among any of the defendants. *See Hawkins v. O'Leary*, 729 F.Supp. 600 (N.D.Ill.1990) (complaint which

alleged no facts of class-based discrimination and failed to elaborate or substantiate bold assertion of "conspiracy" failed to state claim under § 1985). The only allegation in the complaint relating to any type of conspiracy is concerned with a purported conspiracy to deprive Mr. Patrick of his medication. In this regard, the complaint alleges that on the morning of August 10, 1990, Officer Nornes, "with conspiracy to deprive me of my medication, went around to all of the other kitchen-inmate-workers, and told them to go get there medication, she never told me to go get mine...." This allegation makes no reference to a racially motivated conspiracy, and none can be inferred even under a liberal construction of Mr. Patrick's complaint. *See Tarkowski v. Bartlett Realty Co.*, 644 F.2d 1204, 1208 (7th Cir.1980); *Taylor v. Federal Home Loan Bank Bd.*, 661 F.Supp. 1341, 1346–47 (N.D.Tex.1986) (plaintiff must allege some racial or otherwise class-based purpose for alleged conspiracy); *Stringer v. Fleming*, No. 87 C 0224, slip op., 1989 WL 118209 (N.D.Ill. Sept. 22, 1989) (LEXIS, Genfed Library, court's file) (same).

Because Mr. Patrick's amended complaint fails to allege the existence of a racially motivated or class-based conspiracy among any of the defendants, it fails to state a claim under § 1985(3). *See Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981); *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir.1971). Moreover, since liability under § 1986 is merely derivative of liability under § 1985, it must also be concluded that Mr. Patrick's amended complaint, which fails to state a claim under § 1985, likewise fails to state a claim under § 1986. *See Perkins v. Silverstein*, 939 F.2d 463, 468, 472 (7th Cir.1991); *Grimes v. Smith*, 776 F.2d 1359, 1363 (7th Cir.1985); *Williams v. St. Joseph Hospital*, 629 F.2d 448, 452 (7th Cir.1980); *Stringer v. Fleming*, No. 87 C 0224, slip op., 1989 WL 118209 (N.D.Ill. Sept. 22, 1989) (LEXIS, Genfed Library, courts file); *Blackmon v. DeRobertis*, No. 83 C 6879, 1989 WL 31059 (N.D.Ill. Mar. 24, 1989) (LEXIS, Genfed Library, courts file).

### IV. Claims Under 42 U.S.C. § 1983

Section 1983 provides the only cause of action for any of Mr. Patrick's federal claims. Section 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

In order for Mr. Patrick to prevail on his claims under § 1983, he must establish that: " '(1) [he] held a constitutionally protected right; (2) [he was] deprived of this right in violation of the constitution; (3) the defendants intentionally caused this deprivation; and (4) the defendants acted under color of [state] law.' " *Patrick v. Jasper County*, 901 F.2d 561, 565 (7th Cir.1990), *quoting Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir.1988). It is fundamental that in the absence of a violation of a federal right, there is no basis for liability under § 1983. *Clark v. Link*, 855 F.2d 156, 161-63 (4th Cir.1988); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1349 (7th Cir.1985) ("... an alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the right encompassed in the statute is guaranteed under the United States Constitution.") Moreover, as the Supreme Court has recently emphasized, "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989), *quoting Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979).

Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility. *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir.1984). In *Wolf-Lil-lie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983), the Seventh Circuit emphasized that "[s]ection 1983 creates a cause of action based upon personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." (emphasis in original). *See Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986); *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir.1982); *Adams v. Pate*, 445 F.2d 105, 107 (7th Cir.1971). An official is personally involved if (a) he participates directly in the constitutional deprivation, (b) he acts or fails to act with reckless disregard of the plaintiff's constitutional rights, or (c) the conduct that deprived the plaintiff of his constitutional rights occurred at the official's direction or with his knowledge and consent. *Rascon*, 803 F.2d at 274; *Smith v. Rowe*, 761 F.2d 360, 269 (7th Cir.1985); *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982). "[I]t is not sufficient for a section 1983 plaintiff to show that a supervisory official was remiss in supervising the implementation of policy in force in an institution. Rather, to establish a claim against a supervisory official, there must be a showing that the official knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *Rascon*, 803 F.2d at 273-74. As the Supreme Court made clear in *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986):

It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

#### A. Claims Under the First and Fourth Amendments

Mr. Patrick's First and Fourth Amendment claims appear related only to his allegations against defendant Metzcus. In this regard, the complaint alleges that on August 7, 1990, while Mr. Patrick was

at sick call, he noticed that his medical packet contained a "yellow form 5741 envelope" along with a letter he had written to Dr. O'Brien on July 23, 1990. When he asked what his letter to Dr. O'Brien was doing in his medical packet, he was told that the letter had been opened by Anthony Metzcus (the WCC's health care administrator). Mr. Patrick is evidently claiming that defendant Metzcus violated his First and Fourth Amendment rights by interfering with his mail and by conducting an illegal search of his letter to Dr. O'Brien.

■ The complaint fails to state a claim under the Fourth Amendment. A prisoner, such as Mr. Patrick, can have no reasonable expectation of privacy in his non-privileged mail. *See Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). As for Mr. Patrick's First Amendment claim, the complaint merely alleges that defendant Metzcus "opened" Mr. Patrick's letter to Dr. O'Brien. There is no indication as to how the letter came into Mr. Metzcus' possession, and Mr. Patrick's allegations do not exclude the reasonable possibility that the letter actually reached Dr. O'Brien's office and was then returned to the WCC's medical unit for action or inclusion in Mr. Patrick's medical packet. Accordingly, Mr. Patrick's claims under the First and Fourth Amendments should be dismissed.

### B. *Claim Under the Fifth Amendment*

■ The complaint alleges that the defendants violated Mr. Patrick's rights under the Fifth Amendment. Considering the nature of Mr. Patrick's factual allegations, and noting that the Fifth Amendment does not contain an express equal protection clause, the court can only infer that Mr. Patrick must be attempting to invoke the Fifth Amendment's Due Process Clause. The Due Process Clause of the Fifth Amendment, however, applies only to action by the federal government, not the state or local governments. *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Public Utilities Comm. v. Pollak*, 343 U.S.

451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952); *Andrews v. Consolidated Rail Corp.*, 831 F.2d 678, 681–83 (7th Cir.1987) (upholding dismissal of Fifth Amendment claim where defendant was neither an agency nor an entity of the federal government); *Huffacker v. Bucks County Dist. Attorney's Office*, 758 F.Supp. 287, 290 (E.D.Pa.1991); *Rothner v. City of Chicago*, 725 F.Supp. 945, 949 (N.D.Ill.1989). Mr. Patrick's Fifth Amendment claim must, therefore, be dismissed.

### C. *Claims Under the Eighth Amendment*

■ "The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 666, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962), prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, —— U.S. ——, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991). To state an Eighth Amendment claim of cruel and unusual punishment with respect to medical care, a prisoner must allege "acts and omissions sufficiently harmful to evidence deliberate indifference to serious medical needs," *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Benson v. Cady*, 761 F.2d 335, 340 (7th Cir.1985). In *Estelle*, the Supreme Court recognized that deliberate indifference to the serious medical needs of prisoners "constitutes the 'unnecessary and wanton infliction of pain,'" *Id.* at 105, 97 S.Ct. at 291, *quoting Gregg v. Georgia*, 428 U.S. 153, 182–83, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976), and may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or *intentionally interfering with the treatment once prescribed.*" (citation omitted; emphasis supplied). *Id.* 429 U.S. at 104, 97 S.Ct. at 291. At the same time, the court cautioned that "[t]his ... does not mean ... that every claim by a prisoner that he has not received adequate medical treatment states a claim under the Eighth Amendment." *Id.* at 105, 97 S.Ct. at 291. Medical malpractice, inad-

vertent failure to provide adequate medical care, or simple negligence does not amount to a constitutional violation. *Id.* at 106, 97 S.Ct. at 292. As the Seventh Circuit stated in *Duckworth v. Franzen,* 780 F.2d 645, 652–53 (7th Cir.1985), "the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is insufficient. *Id.* at 653. *See Smith–Bey v. Hospital Administrator,* 841 F.2d 751, 759 (7th Cir. 1988); *Shockley,* 823 F.2d at 1072; *Ford v. Lane,* 714 F.Supp. 310, 315–16 (N.D.Ill. 1989). A prisoner can prove criminal recklessness only by demonstrating a defendant's subjective mental state; liability cannot be predicated on an objective consideration of what a defendant "should have known." *McGill v. Duckworth,* 944 F.2d 344 (7th Cir.1991); *see Steading v. Thompson,* 941 F.2d 498, 499 (7th Cir.1991). The requisite subjective intent may be established by: 1) showing that a defendant had " 'actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it,' " *McGill,* 944 F.2d at 348, *quoting Franzen,* 780 F.2d at 653; or 2) showing that a defendant deliberately avoided acquiring knowledge of the impending harm. *McGill,* at 351.

Further insight into the application of the "deliberate indifference" standard can be gained from an examination of the Supreme Court's analysis of the facts in *Estelle.* Respondent Gamble was injured while performing a prison work assignment. Like Mr. Patrick in the present case, respondent Gamble was a prisoner who filed a *pro se* complaint against the Texas Department of Corrections, the warden of the prison where Gamble was incarcerated, and a physician who was a medical director of the Department of Corrections and chief medical officer of the prison hospital. The district court *sua sponte* dismissed the complaint for failure to state a claim upon which relief could be granted, and the court of appeals subse-

quently reversed and remanded the case with instructions to reinstate the complaint. On granting certiorari, the Supreme Court reversed, holding that the Court of Appeals erred in finding that the complaint stated a claim with respect to the alleged insufficiency of the medical treatment which was provided to Gamble. In this regard, the Supreme Court, applying the liberal standards mandated by *Haines v. Kerner,* stated:

> Even applying these liberal standards, however, Gamble's claims against Dr. Gray, both in his capacity as treating physician and as medical director of the Corrections Department, are not cognizable under § 1983. Gamble was seen by medical personnel on 17 occasions spanning a 3–month period: by Dr. Astone five times; by Dr. Gray twice; by Dr. Headon three times; by an unidentified doctor and inmate nurse on the day of the injuries; and by medical assistant Blount six times. They treated his back injury, high blood pressure, and heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problems; his complaint is 'based solely on the lack of diagnosis and inadequate treatment of his back injury.' ... The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued.... The Court of Appeals agreed, stating: 'Certainly an X-ray of [Gamble's] lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing.' [*Gamble v. Estelle,*] 516 F.2d [937] at 941 [ (5th Cir.1975) ]. But the question whether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter of medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical mal-

practice, and as such the proper forum is the state court under the Texas Tort Claims Act.

*Id.* 429 U.S. at 107–08, 97 S.Ct. at 292–93.

This court must also consider the recent decision of the Seventh Circuit in *Hughes v. Joliet Correctional Center*, 931 F.2d 425 (7th Cir.1991). In that case, the complaint alleged that upon his transfer to the Joliet Correctional Center Hughes complained to a doctor about weakness in both legs as a result of a gunshot wound for which he had been hospitalized for two months and which had injured his spine. At the time, Hughes was on crutches, and the examining physician gave him some pain medication. On the following day, Hughes was unable to get out of bed, and on the next day, when a nurse walked by his cell, he complained to her that he could not walk to the chow hall because his back hurt when he tried to stand up, that his legs were very weak, and that he had to see a doctor. The nurse told him that he would have to wait until the following day, a Monday, because there was no doctor on duty at the Correctional Center on Sunday. Later on Sunday, Hughes repeated his complaints to a guard and asked to take his meals in his cell, as he had been allowed on the previous day. Upon checking with the nurse, the guard was told that nothing was wrong with Hughes and that he could go and get his own food. As a result, Hughes skipped his meals on Sunday. On that evening, while attempting to screw the light bulb in his cell into its socket, Hughes fell off his bed. When a guard passed by, Hughes told her that he could not move. He was thereupon taken to the prison hospital and given pain medication. The Seventh Circuit described the rest of Hughes' allegations as follows:

It was not until 1:30 the following afternoon that Hughes, in the prison hospital, was X-rayed; and it was not until the day following that that he was seen, for the first time, since entering Joliet, by a doctor—Defendant Harper. 'Dr. Harper said that he had never seen an X-ray of me before and said that he could see where my vertebrae had been tore out and that some bullet fragments were still

around my spine; however, he stated that he saw no new damage. He also stated that he was not a spine or back specialist, but he did say that he wanted to see me walking soon.' This was on Tuesday. The next day Harper told Hughes 'that he thought I could walk but was not sure. I told Dr. Harper that the pain medication was not helping me and he stated that he was not going to give my anything else for my pain, and that he thought I was full of bullshit.' A week later, Hughes, who was still in the prison hospital, told Harper that he had no feeling in his legs and could not move them. He asked for a wheelchair and also to see a specialist for spinal injuries. Dr. Harper's response was to order Hughes's transfer to the psychiatric ward, where Nurse Koehler removed Hughes's crutches and leg brace because psychiatric patients are not permitted to have such things. Also (as alleged in a subsequent pleading), Harper ordered Hughes's bed moved away from the toilet, so that he would have to walk to the toilet in order to use it. On April 4, Hughes was finally examined by a neurologist, who told him he will never walk again.

*Id.* In reviewing Hughes' complaint under a 12(b)(6) standard, the Seventh Circuit provided the following analysis:

If Harper and Koehler were merely careless in their diagnosis and treatment of Hughes—being honestly convinced that he was a malingerer, as the medical reports in Hughes's file (of which more shortly) state—then Hughes clearly is in the wrong court. He should be pursuing a malpractice action in an Illinois state court. If on the other hand Harper and Koehler were trying to cripple Hughes, then, equally clearly, they are guilty of inflicting cruel and unusual punishment, for which federal law gives Hughes a remedy. We do not understand Hughes to be charging so extreme a form of misconduct. But we do think he is charging a form of misconduct that, while less egregious, is actionable under the cruel and unusual punishments

clause. The facts suggest that these two defendants—particularly Dr. Harper—were treating Hughes not as a patient, but as a nuisance; that they were not only careless of his welfare, but indifferent to it; that although they doubtless underestimated the severity of his injury, at the same time they were insufficiently interested in his health to take even minimum steps to guard against the possibility that the injury was severe. Such words and deeds as telling Hughes he was full of bullshit, shifting him to the psychiatric ward where he would not be allowed to have his crutches and leg brace, and ordering the bed moved away from the toilet so that Hughes would have to get up and walk to it (without the aid of crutches, since he was still in the psychiatric ward) suggest more than mere neglect—suggest hostility, brutality, even viciousness. And this in dealing with a man who had entered the prison on crutches just days before, after two months in the hospital recovering from a spinal injury. The facts alleged are not as raw as those alleged in *Williams v. Vincent*, 508 F.2d 541 (2d Cir.1974), where (according to the complaint) the plaintiff's ear had been cut off by another inmate and the prison doctor told the plaintiff 'he did not need his ear,' threw away the severed portion in front of the plaintiff, and then sewed up the stump. But they are raw enough to defeat a motion to dismiss for failure to state a claim.

*Id.* at 428.

The court is also mindful of the Seventh Circuit's decision in *Kelley v. McGinnis*, 899 F.2d 612 (7th Cir.1990) (per curiam). In that case, the plaintiff, a prison inmate, alleged that he suffered from chronic foot problems and that the defendants, state prison officials and prison administrators, refused to provide him with adequate medical treatment over a three-year period. The Seventh Circuit, in reversing the entry of summary judgment in favor of the defendants, held that the plaintiff could recover if he could establish that prison clinic

personnel "deliberately gave him a certain kind of treatment knowing that it was ineffective, either as a means of toying with him or as a way of choosing 'the "easier and less efficacious treatment." ' " *Id.* at 616, *quoting Estelle*, 429 U.S. at 104 n. 10, 97 S.Ct. at 291 n. 10, *quoting Williams v. Vincent*, 508 F.2d 541, 544 (2nd Cir.1974). The court in *Kelley* also recognized a second theory of recovery—that the prison clinic's repeated, long-term negligent treatment of the plaintiff's medical condition could sufficiently evidence deliberate indifference. *Kelley*, 899 F.2d at 616–17.

Based on a liberal construction of Mr. Patrick's complaint, the court is able to discern the following potential claims under the Eighth Amendment: 1) conduct by defendants Haley, Kuhn and Staples in assigning Mr. Patrick to work in the prison kitchen "pending medical AM," [3] even though Mr. Patrick informed them that he had "scoliosis of the spine," together with "pain and fatigue," and showed them his health report from the LaPorte County Health Department; 2) failure of defendants Bautista, Sango, Villoso, O'Brien and Patterson to conduct a proper medical evaluation of Mr. Patrick and their action in allegedly forcing him to work in the kitchen notwithstanding their awareness that he was a carrier of tuberculosis; 3) refusal by defendants Bautista, Sango and Patterson to provide Mr. Patrick with a bottom bunk pass after he advised them that he "had pain climbing to a top bunk;" 4) refusal by Dr. O'Brien to order a back brace and orthopedic footwear, provide Mr. Patrick with a bottom bunk pass, or restrict his "job limitation's," after Dr. O'Brien diagnosed Mr. Patrick as having scoliosis; 5) refusal by defendants Bengert and Haley, Mr. Patrick's dorm counselors, to consider his medical documentation or talk to him about his medical disabilities; 6) refusal by Dr. Villoso to get Mr. Patrick an appointment with Dr. O'Brien on July 20, 1990, along with her conduct in examining Mr. Patrick's stomach area, telling him that there was nothing wrong with him, indicating that he would be okay, refusing to

---

3. The complaint does not challenge Mr. Pat- rick's working conditions in the kitchen.

provide him with a "no-work pass," and telling him to go back to work, after he advised her that he was in pain in his stomach area and spine and that he needed a no-work pass from the kitchen because he had tuberculosis and might be exposing others or contaminating food in the kitchen; 7) acts by Officer Tappan while Mr. Patrick was on sick call on July 31, 1990, in calling him "a stupid fucking N———," telling him that he didn't need any medication, and telling him "—— get the f—— out of here....;" 8) conspiracy by Officer Nornes to deprive Mr. Patrick of his medication and her refusal to allow him to get his medication on August 10, 1990; and 9) refusal by Nurse Ely to provide him with a limited duty work pass on August 10, 1990, even though he told her that he was in pain, that his back hurt, that he had heartburn, dizziness, and was vomiting, together with her refusal, "on some occasions," to see him when he reported for sick call, and her refusal on January 22, 1991 to "see [him] again."

■■■ The complaint fails to state a claim under the Eighth Amendment against defendants Haley, Kuhn and Staples, for assigning Mr. Patrick to work in the prison kitchen. In *Williams v. Faulkner*, 837 F.2d 304 (7th Cir.1988), the plaintiff, a prisoner, alleged that he was diagnosed as having a brain tumor that affected his equilibrium; that the defendant physician was aware of his condition; that the physician did not give the plaintiff any treatment for the tumor, thereby endangering his life; and that "he was forced to work in the Reformatory garment manufacturing industry despite the recommendation of the prison doctor that he be placed on medical idle status." *Id.* at 307–08. Although the Seventh Circuit found that the district court had erred in dismissing the complaint as frivolous under 28 U.S.C. § 1915(d), it "agree[d] with the district court that Williams' eighth amendment allegations *failed to demonstrate the level of deliberate indifference necessary to survive a motion to dismiss under Rule 12(b)(6)."* (emphasis supplied). *Id.* at 308. Mr. Patrick's assertion that defendants Haley, Kuhn and Staples ignored his medical docu-

mentation and complaints in assigning him to work in the prison kitchen are even less serious than Williams' claim that the defendants forced him to work in spite of a physician's recommendation that he be placed on idle status. In this case, the court also notes that Mr. Patrick was evidently assigned to work in the kitchen pursuant to a classification hearing conducted on May 17 or 23, 1990. A copy of the hearing report attached to the complaint states that Mr. Patrick was assigned to the kitchen "pending medical AM," indicating that his assignment was conditioned on a medical authorization or the results of a medical examination. Under these circumstances, it is apparent that defendants Haley, Kuhn and Staples did not ignore Mr. Patrick's physical complaints, and their action in assigning him to the kitchen "pending medical" does not evidence criminal recklessness or deliberate indifference to his serious medical needs. *See Mikeska v. Collins*, 900 F.2d 833, 837 (5th Cir.1990) (upholding dismissal of prisoner complaint as frivolous in absence of any suggestion that prison officials knowingly assigned prisoner to work detail which they knew would aggravate his stomach ulcer); *Ford v. Lane*, 714 F.Supp. at 316 (assignment of prisoner to work in mattress factory without first requiring a physical examination failed to state claim under Eighth Amendment notwithstanding that prisoner stated in his employment application that he was suffering from and taking medication for a heart condition, and that his stomach bothered him on occasion).

■■■ The complaint also fails to state an Eighth Amendment claim based upon the alleged failure of defendants Bautista, Sango, Villoso, O'Brien and Patterson "to conduct a proper-medical evaluation," or their conduct in allegedly forcing Mr. Patrick to work in the kitchen in spite of their awareness that he was a carrier of tuberculosis. The failure of these defendants to conduct a "proper medical evaluation" suggests, at most, that they may have been guilty of medical malpractice, or that their evaluation was *objectively* deficient; it certainly does not imply that they acted with a

deliberate intent to inflict harm upon Mr. Patrick or that they had actual knowledge of harm easily preventable and failed to prevent it. " 'Inadvertent failures to provide adequate medical care' or 'negligence in diagnosing or treating a medical condition' do not rise to the level of an eighth amendment violation." *Benson,* 761 F.2d at 340, *quoting Estelle,* 429 U.S. at 105, 97 S.Ct. at 291. Mr. Patrick's further claim that the noted defendants forced him to work in the kitchen notwithstanding their awareness that he was a "carrier" of tuberculosis adds nothing. The complaint does not indicate that Mr. Patrick suffered any harm simply by being a "carrier" of tuberculosis (see LaPorte County Health Dept. letter attached to complaint), nor does it suggest an awareness on the part of the defendants that he would be harmed by having to do kitchen work because he was a tuberculosis carrier. Mr. Patrick's apparent concern that he might communicate the disease to other inmates through his kitchen work may be laudable, but it does not state a claim for violation of *his* Eighth Amendment right to be free from cruel and unusual punishment.

■ Mr. Patrick's allegation that Drs. Bautista and Sango and Nurse Patterson refused to provide him with a bottom bunk pass after he advised them that he "had pain climbing to a top bunk," as well as his allegations against Dr. Villoso regarding her actions on July 20, 1990, while far less serious than the allegations described in *Hughes,* are arguably sufficient and should await the presentation of evidence. Accordingly, defendants' motion to dismiss with respect to the alleged refusal of Drs. Bautista and Sango and Nurse Patterson to issue a bottom bunk pass, as well the conduct of Dr. Villoso on July 20, 1990, should be denied.

■ The complaint falls short of stating a claim against Dr. O'Brien based upon his alleged refusal to order a back brace and orthopedic footwear, provide Mr. Patrick with a bottom bunk pass, or restrict his "job limitation's," after Dr. O'Brien diagnosed Mr. Patrick as having scoliosis. The allegations against Dr. O'Brien imply nothing more than a disagreement over treatment. The complaint does not expressly allege that Dr. O'Brien was "deliberately indifferent" to Mr. Patrick's serious medical needs, and it contains nothing to suggest that Dr. O'Brien consciously declined to order or prescribe the specific treatment or measures which Mr. Patrick desired in order to harm him or cause him pain. As the Supreme Court indicated in *Estelle,* "the question whether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter of medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." 429 U.S. at 108, 97 S.Ct. at 293. *See Jackson v. O'Leary,* No. 89 C 7139, slip op., 1990 WL 251769 (N.D.Ill.Dec. 18, 1990) (LEXIS, Genfed Library, courts file) (complaint dismissed where prison doctors' discontinuance of gym shoes for inmate with callouses on feet failed to demonstrate deliberate indifference to serious medical needs).

■ Nor does the complaint state an Eighth Amendment claim against Officer Nornes (or any other defendant) for an alleged "conspiracy" to deprive Mr. Patrick of his medication (or medical care in general). The complaint alleges that on the morning of August 10, 1990, Officer Nornes, "with conspiracy to deprive me of my medication, went around to all of the other kitchen-inmate-workers, and told them to go get there medication, she never told me to go get mine (medication) and after everyone else came back, i asked her when was i am going to go to medication, Nornes said: I'll let you know—go back to work; about a half of hour later, one of the inmate who alread had medication, told me they had alread went to med." When, according to the complaint, Mr. Patrick asked Nornes if he could go get his medication and indicated that he was sick and in pain, she replied, "Not now—I'll let you know— go back to work." Mr. Patrick alleges that he never did get his medication that day, and that he was vomiting, dizzy, fatigued and in pain "all day." Neither these allegations, nor the complaint considered in its

entirety, support Mr. Patrick's assertion that Officer Nornes *conspired* to deprive him of his medication. As such, Mr. Patrick's claim that Officer Nornes conspired to deprive him of his medication represents a mere conclusory allegation which is insufficient to state a claim. *See Gray v. Dane County*, 854 F.2d at 182 (7th Cir.1988).

■ Beyond Mr. Patrick's claim of a conspiracy to deprive him of his medication, his allegations against Officer Nornes present a closer question. Initially, the court notes that the complaint does not specify the nature or purpose of the medication which Mr. Patrick was taking at the time. INH is the only type of medication referred to in the complaint and, according to the letter from the LaPorte County Health Department, it was being provided to Mr. Patrick in order to *prevent* him from developing active tuberculosis. According to the complaint, it was Mr. Patrick's consumption of INH, not his failure to receive INH, which caused him to experience dizziness, fatigue and vomiting. The complaint, itself, thus contradicts any suggestion that Mr. Patrick's failure to receive his medication on August 10, 1990 would have caused him any harm or discomfort. As the Seventh Circuit recently noted in *Martin v. Davies*, 917 F.2d at 341, a district court is not required to ignore facts which undermine or contradict a plaintiff's claim when ruling on a motion under Rule 12(b)(6). Secondly, the complaint alleges that Officer Nornes merely put-off two requests by Mr. Patrick to go get his medication during the time he was working in the kitchen on August 10; it does not explain how Officer Nornes' refusal to let him go during that period of time prevented him from obtaining his medication for the entire day. Thirdly, the fact that Nornes told Mr. Patrick "not now—I'll let you know," in response to Mr. Patrick's two requests to be allowed to get his unspecified medication, even when combined with her assumed failure to let him go at a later time, appear to imply little more than a matter of simple negligence. Lastly, the complaint affirmatively shows that Mr. Patrick was allowed to attend sick call at some time on August 10, 1990. In spite of these apparent deficiencies and contradictions, the court still believes that Mr. Patrick could prove facts establishing deliberate indifference on the part of Officer Nornes with respect to her refusal of his requests to obtain his medication. If Officer Nornes deliberately interfered with his medically prescribed treatment for the purpose of causing him unnecessary pain, she could be subject to liability even though he suffered no apparent injury. *See e.g. Gill v. Mooney*, 824 F.2d 192 (2nd Cir.1987). Accordingly, Mr. Patrick's claim that Officer Nornes was engaged in a "conspiracy" to deprive him of his medication should be dismissed, while defendants' motion to dismiss with regard to Nornes' alleged refusal to permit him to obtain his medication on August 10, 1990, should be denied.

■ The complaint fails to state an Eighth Amendment claim against defendants Bengert and Haley for their alleged refusal to consider Mr. Patrick's medical documentation or talk to him about his medical disabilities. The complaint indicates that on "different occasions" Mr. Patrick talked to Daniel Bengert, his dorm counselor, and informed Bengert that he had tuberculosis. According to the complaint, Bengert refused to look at Mr. Patrick's medical documentation, refused to talk to him about his medical disabilities and ordered him out of his office. The complaint further alleges that defendant Haley, another dorm counselor, refused to consider his medical documentation and told Patrick to leave his office. Quite simply, there is no indication in the complaint that Bengert's or Haley's responsibilities included providing health care, and there is no indication that Bengert's or Haley's refusal to look at Mr. Patrick's documentation and discuss his medical problems hindered or prevented him from receiving treatment for any of his medical needs. The complaint shows that medical care was available at the WCC, and it does not allege that Bengert or Haley prevented Mr. Patrick from receiving that care. *See e.g. Ford v. Lane*, 714 F.Supp. at 316 (complaint failed to state Eighth Amendment claim absent any indication that defendant

prevented prisoner from receiving medical care and where allegations showed that prisoner visited doctor on several occasions).

■ Lastly, the court believes that the complaint does state an Eighth Amendment claim against Officer Tappan based upon his alleged conduct on July 31, 1990, as well as against Nurse Ely for her actions on August 10, 1990 and January 22, 1991. *See Kelley,* 899 F.2d at 616 (allegation that personnel at prison clinic intentionally refused to allow prisoner to see a doctor about his foot problems, repeatedly denied him access to a doctor and provided him with ineffective foot treatments, held sufficient to state Eighth Amendment claim). The defendants' motion to dismiss should, therefore, be denied as to Mr. Patrick's Eighth Amendment claims against defendants Tappan and Ely.

### D. *Claim Under the Thirteenth Amendment*

■ Mr. Patrick's complaint also alleges that some defendants forced him to work in the prison kitchen, thus violating the Thirteenth Amendment's prohibition against involuntary servitude. This claim is frivolous. As the Fifth Circuit observed in *Wendt v. Lynaugh,* 841 F.2d 619, 620 (5th Cir.1988): "It should be expected that the reading of the words of the Amendment would be all that could possibly be necessary to treat as frivolous such a claim." The Thirteenth Amendment states:

> Neither slavery nor involuntary servitude, *except as a punishment for crime whereof the party shall have been duly convicted,* shall exist within the States, or any place subject to their jurisdiction. (emphasis supplied).

In this case, it is clear that from Mr. Patrick's complaint, as well as from the attached classification hearing report, that he has been convicted of criminal offenses and that the events alleged in his complaint occurred while he was serving a sentence pursuant to that conviction. His situation is thus exempted by the literal language of the Thirteenth Amendment.

It is well-established that "[w]hen a person is duly tried, convicted and sentenced in accordance with law, no issue of peonage or involuntary servitude arises." *Draper v. Rhay,* 315 F.2d 193, 197 (9th Cir.), *cert. denied,* 375 U.S. 915, 84 S.Ct. 214, 11 L.Ed.2d 153 (1963). Courts have uniformly held that the constitutional proscription against involuntary servitude does not apply to convicted prisoners such as Mr. Patrick. *Ruark v. Solano,* 928 F.2d 947, 949–50 (10th Cir.1991); *Mikeska v. Collins,* 900 F.2d 833, 837 (5th Cir.1990); *Piatt v. MacDougall,* 773 F.2d 1032, 1035 (9th Cir.1985); *United States v. Drefke,* 707 F.2d 978, 983 (8th Cir.), *cert. denied sub nom., Jameson v. United States,* 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 321 (1983); *Omasta v. Wainwright,* 696 F.2d 1304, 1305 (11th Cir. 1983); *Stiltner v. Rhay,* 322 F.2d 314, 315 (9th Cir.1963), *cert. denied sub nom., Stiltner v. Washington,* 376 U.S. 920, 84 S.Ct. 678, 11 L.Ed.2d 615 (1964); *Ray v. Mabry,* 556 F.2d 881, 882 (8th Cir.1977); *Jobson v. Henne,* 355 F.2d 129, 131 (2nd Cir.1966); *Talkowski v. Lane,* No. 89 C 6338, slip op., 1990 WL 60706 (N.D.Ill. Apr. 19, 1990) (LEXIS, Genfed Library, courts file); *Graham v. Thompson,* Nos. 88 C 3323, 88 C 3499, 88 C 3500, slip op., 1988 WL 64267 (N.D.Ill. June 6, 1988) (LEXIS, Genfed Library, courts file); *Bottom v. Mondale,* No. 79 Civ. 6228, slip op. (S.D.N.Y. Sept. 30, 1980); *see also Morales v. Schmidt,* 489 F.2d 1335 (7th Cir.1973). Mr. Patrick's Thirteenth Amendment claim must, therefore, be dismissed.

### E. *Claims Under the Due Process and Equal Protection Clauses of the Fourteenth Amendment*

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State ... shall ... deprive any person of life, liberty, or property, without Due Process of law...." *U.S. Const. amend.* XIV, § 1. To prevail on a due process claim in an action under § 1983, a plaintiff must, in addition to demonstrating that the conduct complained of was committed by a person acting under color of state law, prove: "(1) that the claimed interest is a protected property or liberty interest under

the fourteenth amendment; (2) that 'the alleged loss ... amounted to a deprivation;' and (3) that the deprivation was without due process of law." *Polenz v. Parrott,* 883 F.2d 551, 555 (7th Cir.1989) *quoting Parratt v. Taylor,* 451 U.S. 527, 536–37, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). *See New Burnham Prairie Homes v. Village of Burnham,* 910 F.2d 1474, 1479 (7th Cir.1990) ("Before a party may assert a due process argument—procedural or substantive—it must allege that it has a 'legitimate claim of entitlement' to the right being asserted."); *Smith v. Town of Eaton, Ind.,* 910 F.2d 1469, 1471 (7th Cir.1990) ("A due process claim (procedural or substantive) must be based on a violation of a protected liberty or property interest."); *Bayview–Lofberg's, Inc. v. City of Milwaukee,* 905 F.2d 142, 144 (7th Cir.1990); *Williams v. Lane,* 851 F.2d 867, 879 (7th Cir.1988) ("Prisoners claiming a due process violation under the Fourteenth Amendment must demonstrate that they have been deprived of a protected liberty or property interest by arbitrary government action."); *Universal Security Insurance Co. v. Koefoed,* 775 F.Supp. 240 (N.D.Ill 1991) (LEXIS, Genfed Library, courts file). "Property interests ... are not created by the Constitution." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Rather, they are "defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits" *Id.* "Liberty interests, on the other hand, may flow directly from the fourteenth amendment or, like property interests, be created by state law." *Polenz,* 883 F.2d at 555. To have a protected property or liberty interest, an individual must have a "legitimate claim of entitlement to it." *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989).

In this case, the complaint alleges that the defendants violated Mr. Patrick's right to due process by: 1) depriving him of "right to life—by no medical care and medical malpractice," and conspiracy to deprive him of medical care; 2) denying and hampering his "mail to medical doctor;" and 3) forcing him to work against his will. These allegations allude to violations of Mr. Patrick's right to substantive due process, and they imply liberty interests in receiving adequate medical care, in remaining free to communicate through the mail without interference, and in remaining free from any compulsion to work.

■ Any asserted liberty interests in receiving adequate medical care and remaining free to communicate through the mail duplicate recognized protections afforded Mr. Patrick under the Eighth and First Amendments, respectively. In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989), the Supreme Court held that where a particular constitutional amendment provides an explicit textual source of constitutional protection against certain governmental action, that amendment, rather than the more generalized notion of substantive due process, must guide the analysis. Because Mr. Patrick's claims regarding the adequacy of his medical care and interference with his mail implicate specific constitutional amendments, he cannot bring separate, independent claims under § 1983 based on the assertion that the same conduct violated his right to substantive due process. *See Walker v. Norris,* 917 F.2d 1449, 1454–55 (6th Cir.1990); *Warren v. State of Mo.,* 754 F.Supp. 150, 153–54 (W.D.Mo.1990). Mr. Patrick's due process claims regarding the adequacy of his medical care and interference with his mail should, therefore, be dismissed pursuant to *Graham.*

■ As previously determined, Mr. Patrick is not included in the protection afforded by the Thirteenth Amendment because he is a convicted prisoner. *Graham* would not preclude a substantive due process claim under these circumstances, *c.f. Frye v. Town of Akron,* 759 F.Supp. 1320, 1324 (N.D.Ind.1991), and the question becomes one of whether Mr. Patrick has a protected liberty interest in remaining free from com-

pulsory labor. The court concludes that he does not. First, the complaint does not refer to any state statute, rule or regulation which could arguably create such an interest, and the court is aware of none. Second, it would be anomalous, indeed, to construe the Fourteenth Amendment as giving rise to a legitimate claim of entitlement with respect to a right expressly negated by the Thirteenth Amendment. Third, the Supreme Court has "rejected the notion 'that *any* change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause.'" *Thompson*, 109 S.Ct. at 1908 (*quoting Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976)).

> As long as the conditions or degree of confinement to which a prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.

*Montayne v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). The Supreme Court has observed that "prison officials have broad administrative and disciplinary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests." *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). *See Wallace v. Robinson*, 940 F.2d 243 (7th Cir.1991) (prisoner lacked "legitimate claim of entitlement" to prison job assignment); *Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir.1989) ("prisoner has no protected liberty or property interest *per se* in avoiding transfer from a desirable to an onerous job in the prison system."). Clearly, requiring a convicted prisoner to work at a prison job "is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt*, 459 U.S. at 468, 103 S.Ct. at 869. The Due Process Clause, therefore, provides convicted prisoners such as Mr. Patrick with no independent protection against being forced to perform work. Mr. Pat-

rick's claim that forcing him to work against his will violated his right to due process must be dismissed. *See Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir.1989) (plaintiff failed to state a claim under the due process clause where complaint failed to allege that plaintiff was deprived of a property or liberty interest); *Ratliff v. City of Milwaukee*, 795 F.2d 612, 624 (7th Cir.1986) ("There was no error in dismissing plaintiff's due process claim because she did not have a protectable property interest ... nor did the defendants invade any protectable liberty interest.").

■ The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State ... shall ... deny to any person within its jurisdiction the equal protection of the laws." *U.S. Const. amend. XIV*, § 1. To state a claim under the Equal Protection Clause, a plaintiff must allege that a state actor intentionally discriminated against the plaintiff based upon his or her membership in a protected class. *Washington v. Davis*, 426 U.S. 229, 247–48, 96 S.Ct. 2040, 2051–52, 48 L.Ed.2d 597 (1976). *See Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir.1982) ("A plaintiff 'must demonstrate intentional or purposeful discrimination' to show an equal protection violation.") (*quoting Bloomenthal v. Lavelle*, 614 F.2d 1139, 1141 (7th Cir.1980)); *Smith v. Town of Eaton, Ind.*, 910 F.2d 1469, 1472 (7th Cir.1990) ("An equal protection claim must be based on 'intentional discrimination against [the plaintiff] because of his membership in a particular class, not merely [because] he was treated unfairly as an individual.'") (*quoting Huebschen v. Department of Health and Social Servs.*, 716 F.2d 1167, 1171 (7th Cir. 1983); *see also Gray*, 885 F.2d at 414.

■ The allegations in Mr. Patrick's complaint are sufficient to state an equal protection claim against defendants Staples and Tappan. The complaint could be construed as alleging that defendant Staples purposefully assigned Mr. Patrick to work in the kitchen because he is black. *See Harris v. Greer*, 750 F.2d 617 (7th Cir. 1984) (allegation of deliberate racial discrimination in prisoners' job assignments

sufficient to state equal protection claim). The complaint could also be construed as alleging that Officer Tappan intentionally interfered with Mr. Patrick's receipt of medical care on July 31, 1990, because of Mr. Patrick's race. The defendants' motion to dismiss Mr. Patrick's equal protection claims against defendants Staples and Tappan, based upon the noted conduct, should therefore be denied.

■ The complaint, however, fails to state an equal protection claim against any of the other defendants. Mr. Patrick's conclusory assertion that defendants Haley, Kuhn, Nornes and Bengert discriminated against him because he is black is insufficient to state an equal protection claim, unless it is supported by specific factual allegations demonstrating that they intentionally engaged in discriminatory conduct. Yet the complaint contains no facts to support Mr. Patrick's claims of discrimination against defendants Kuhn and Bengert. The complaint alleges that on May 25, 1990, defendant Haley asked Mr. Patrick "why do you people always have something to complaint about—you got it better here than you did on the street's—and go get some more pictures taken—I'm sure there's some contraband photo ticket's somewhere you ought to get—your family won't know the difference." These statements do not alone suggest a racial animus, since it is not apparent whether Haley was referring to blacks or the entire prisoner population. Moreover, even if Haley's statements could be construed as having a racial implication, there are no facts in the complaint indicating that any of Haley's actions with respect to Mr. Patrick had a racial or class-based animus. The same can be said of Mr. Patrick's allegations against defendant Nornes. While the complaint does attribute racially derogatory statements to Nornes on June 22, 1990, it does not allege that any of Nornes' conduct was racially motivated and, more particularly, it does not allege that Nornes prevented Mr. Patrick from obtaining his medication on August 10, 1990, because of his race. *See e.g. Gray v. Lacke,* 885 F.2d at 414. The complaint further alleges that on August 10, 1990, while Mr. Patrick was on sick call, Nurse Ely told him there was nothing wrong with him and advised him to "just go take a shower." Mr. Patrick alleges that this amounted to a "racial slur upon me—she is white." On the contrary, there is nothing in Nurse Ely's alleged statement which would suggest a racial slur, and there is no indication that any of Ely's actions were racially motivated. Finally, the complaint makes no allegation of racial discrimination against any of the remaining defendants. Consequently, Mr. Patrick's equal protection claim should be dismissed with respect to all defendants except for Staples and Tappan.

## V. Claim Based Upon "Agreed Entry" in Anderson v. Orr

■ The complaint alleges that certain conduct by the defendants violated the terms of an "agreed entry" which was previously entered in the case of Anderson v. Orr. The complaint, however, does not contain any further explanation as to the nature of that case, the issues involved, the subject matter of any such "agreed entry," or how the "agreed entry" was supposedly violated. Mr. Patrick's mere conclusory assertion that an order or decree was somehow violated in another case in some unspecified manner is wholly insufficient.

■ Moreover, even if it were assumed that the defendants' conduct did violate such an "agreed entry," it would not be enforceable through an action under § 1983. *DeGidio v. Pung,* 920 F.2d 525, 534 (8th Cir.1990). By its terms, § 1983 provides for a cause of action based upon the deprivation of rights, privileges, or immunities guaranteed by the Constitution or laws of the United States. *Polenz,* 883 F.2d at 555. An agreed order or consent decree is in the nature of a contract, *see Martin v. Davies,* 917 F.2d 336, 339 (7th Cir.1990), and it is neither the Constitution nor a "law" of the United States. "[R]emedial court orders per se, apart from independent constitutional grounds affirmed there, cannot serve as a substantive basis for a § 1983 claim for damages because such orders do not create 'rights, privileges, or immunities secured by the Consti-

tution and laws.'" *Green v. McKaskle,* 788 F.2d 1116, 1123 (5th Cir.1986). Consequently, the alleged violation of the "agreed entry" in *Anderson v. Orr* provides no basis for a claim under § 1983. *See Montgomery v. Cook County Sheriff James E. O'Grady,* No. 89 C 8286, slip op., 1991 WL 10891 (N.D.Ill. Jan. 18, 1991) (LEXIS, Genfed Library, courts file).

### VI. Claim Under IND.CODE 34–4–16–7–1

■■■ The complaint also fails to state a claim under IND.CODE "34–4–16–7–1." (Mr. Patrick apparently intended to refer to IND.CODE 34–4–16.7–1, since IND.CODE 34–4–16–7–1 does not exist.) This statute, which is cited or referred to only once above the caption to the complaint, provides, in part, as follows:

> If a present or former public employee ... is or could be subject to personal civil liability for a loss occurring because of a non-criminal act or omission within the scope of his employment which violates the civil rights laws of the United States, the governmental entity ... shall ... pay any judgment, compromise, or settlement of the claim or suit when the governor, when the case of a claim or suit against a state employee, ... determines that paying the judgment, compromise, or settlement is in the best interest of the governmental entity. The governmental entity shall also pay all costs and fees incurred by or on behalf of a public employee in defense of a claim or suit.

Neither this statute, nor any other statutory provision contained in Chapter 16.7 provides for a private right of action. Any pendent claim under IND.CODE 34–4–16.7–1 "et seq," must therefore fail.

### VII. Other Pendent Claims

■■■ Next to the caption of the second amended complaint, Mr. Patrick has indicated that his action is also based upon "Conspiracy to deprive of medical care ... Medical Malpractice ... Negligence. Breach of Duty of Care ... [and] Personal Injury." As previously noted, the complaint fails to state an Eighth Amendment claim against any defendant for conspiracy

to deprive Mr. Patrick of medication or medical care. For the same reasons, the complaint fails to state a pendent claim under state law for conspiracy to deprive Mr. Patrick of his medication or medical care. The complaint, however, could be construed as stating a medical malpractice or negligence claims under Indiana law against some or all of the defendants. The defendants' motion to dismiss does not specifically address such claims, and the court has not been called upon to sort them out at the pleading stage. Accordingly, the motion to dismiss should be denied as to Mr. Patrick's state law claims for negligence and medical malpractice, but granted as to his state law claim against defendants Staples and Nornes for conspiracy to deprive him of medication or medical care.

### VIII. Recommendation

For the foregoing reasons, it is RECOMMENDED as follows:

1. That the motion to dismiss all damage claims against defendants in their official capacities be GRANTED, and that all such claims be dismissed for lack of jurisdiction over the subject matter;

2. That the motion to dismiss as to all claims against all defendants under 42 U.S.C. §§ 1981, 1982, 1984, 1985, 1986 and 1987 through 1991 be GRANTED;

3. That the motion to dismiss with respect all claims against all defendants under 42 U.S.C. § 1983, for violations of the plaintiff's rights under the First, Fourth, Fifth and Thirteenth Amendments, together with the Due Process Clause of the Fourteenth Amendment be GRANTED;

4. That defendants' motion to dismiss the plaintiff's Eighth Amendment claims against defendants Haley, Kuhn, Staples, Bengert, O'Brien and Metzcus be GRANTED;

5. That the motion to dismiss the plaintiff's Eighth Amendment claims against defendants Bautista, Sango and Patterson, based upon their alleged refusal to provide the plaintiff with a bottom bunk pass, the plaintiff's Eighth Amendment claim against Dr. Villoso,

based upon her conduct of July 20, 1990, the plaintiff's Eighth Amendment claim against Officer Nornes for allegedly refusing to allow the plaintiff to get his medication on August 10, 1990, and the plaintiff's Eighth Amendment claims against defendants Tappan and Ely be DENIED; and that the plaintiff's Eighth Amendment claims against defendants Bautista, Sango, Patterson, Villoso and Nornes be GRANTED in all other respects.

6. That defendants' motion to dismiss as to the plaintiff's equal protection claims against defendants Staples and Tappan be DENIED, and that their motion with respect to the plaintiff's equal protection claims against all other defendants be GRANTED;

7. That defendants' motion to dismiss with respect to any claims based upon the "agreed entry" in the case of Anderson v. Orr, and any claims under IND.CODE 34-4-16-7-1, be GRANTED;

8. That defendants' motion to dismiss as to any state law claim for conspiracy to deprive the plaintiff of medication or medical care be GRANTED;

9. That defendants' motion to dismiss with respect to any state law claims for negligence or medical malpractice be DENIED.

ANY OBJECTIONS to this report and recommendation must be filed with the Clerk of courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Lockert v. Faulkner,* 843 F.2d 1015 (7th Cir.1988); *Video Views, Inc. v. Studio 21 Ltd.,* 797 F.2d 538 (7th Cir.1986).